## ATLANTIC COAST LINE R. CO. v. DUNNING.

### SAME v. MYERS.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1908.)

### Nos. 763, 764.

1. COURTS (§ 314*)—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—CORPORATIONS.

   A railroad corporation of Virginia which owned and operated railroads in that and other states, including South Carolina, by taking out a charter in the latter state, as required by its laws, did not thereby become a citizen of South Carolina for the purposes of the jurisdiction of federal courts, but remains for such purpose a corporation and citizen of Virginia.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 860; Dec. Dig. § 314.*

   Diverse citizenship as ground for federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. MASTER AND SERVANT (§ 100*)—MASTER'S LIABILITY FOR INJURIES TO SERVANT—CONTRACTS RELEASING LIABILITY—ACCEPTANCE OF BENEFITS FROM RELIEF ASSOCIATION.

   Contracts between a railroad, which maintains a relief department to the funds of which it largely contributes, and its employés, by which the latter on receiving an injury are given the option to accept the benefits from such department or to sue the company for damages on account of the injury, but that such acceptance, voluntarily made, shall be an accord and satisfaction of any claim against the company on account of the injury, are not contrary to public policy, but are based upon a sufficient consideration, and are valid and enforceable.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 167; Dec. Dig. § 100.*]

3. COURTS (§ 366*)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION.

   Act S. C. March 7, 1905 (22 St. at Large, p. 962), which provides that any employer maintaining a relief department for its employés shall be liable for the payment of all benefits to which an employé shall be entitled therefrom by reason of any sickness or injury, and in case of an injury the acceptance of such benefits shall not estop the employé to maintain an action against the employer to recover damages for its negligence causing such injury, having been held by the courts of South Carolina to be beyond the power of the Legislature, and that an employé who had elected to accept benefits was estopped from bringing an action for damages notwithstanding the act, the federal court in South Carolina

should have ruled that the acceptance of benefits was a good defense to the action for damages.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*]

In Error to the Circuit Court of the United States for the District of South Carolina, at Charleston.

For opinion below, see 150 Fed. 775.

T. M. Mordecai and P. A. Willcox (Willcox & Willcox, Henry E. Davis, W. Hugher Fitz Simons, and Simeon Hyde, on the briefs), for plaintiff in error.

W. A. Holman (W. B. Gruber, J. G. Padgett, and Legare & Holman, on the briefs), for defendants in error.

Before FULLER, Circuit Justice, and MORRIS and PURNELL, District Judges.

MORRIS, District Judge. These were two cases originally commenced in a court of the state of South Carolina by Dunning, who was plaintiff in one case, and by Myers, who was plaintiff in the other case, against the Atlantic Coast Line Railroad Company, to recover damages for permanent personal injuries which each claimed to have suffered by the wreck of a train on which Dunning was locomotive engineer and Myers was fireman. The injuries were alleged to have been caused by the neglect and wrongful act of the defendant railroad company in providing an unsafe and defective roadbed, in that the timbers and cross-ties supporting the rails on a certain trestle, at a point on its railroad in South Carolina, were rotten and unfit to be used for the purpose.

In the plaintiff's declaration in each case, the defendant was described as a corporation created by and existing under the laws of South Carolina, and engaged in operating a railroad as a common carrier of goods and passengers between Yemassee, S. C., and Charleston, S. C. The defendant appeared, and, denying that it was a corporation of South Carolina, averred that it was a corporation created by and existing under the laws of Virginia, with its principal office and legal residence established and fixed at Petersburg, Va., and averring that the plaintiff in each case was a citizen of South Carolina, it filed its proper petition with bond and sureties, and prayed that the cases be removed to the Circuit Court of the United States for the District of South Carolina on the ground of diverse citizenship. The cases were accordingly removed. Thereupon, the plaintiffs, denying the allegation that the defendant was not a corporation under the laws of South Carolina, moved to remand. A reference was directed by the Circuit Court to a special master to take evidence and report his findings of fact pertinent to the question of diverse citizenship, and upon the coming in of the report the court (Circuit Judge Pritchard), in an able and learned opinion, reported in 150 Fed. Rep. 775, denied the motion and retained jurisdiction. The plaintiffs excepted to the ruling of the court on the motion to remand, and this is the error assigned by the plaintiff.

The defendant railroad company, besides pleading that it had not suffered its track to become defective and dangerous, and that the plaintiff in each case had been guilty of contributory negligence, in addition in each case pleaded a special plea, which in Dunning's Case was as follows:

"That the defendant, Atlantic Coast Line Railroad Company, maintains, in conjunction with its employés, a relief department known as the 'Atlantic Coast Line Railroad Relief Department,' by which, from mutual contributions of defendant and its employés, a fund is created and maintained, from which, among other applications thereof, in case of sickness from natural causes or accident, its employés who are members of said Relief Department are provided medical and surgical treatment and sick and death benefits, and that one of the rules of said Relief Department is to the effect that, in case of sickness or death arising from natural causes, or accident, if an employé who is a member of said Relief Department shall accept any of the benefits derived from said fund, the acceptance of such benefits shall serve to release, quitclaim, and fully discharge the defendant, Atlantic Coast Line Railroad Company, from any and all liability arising from such injury.

"That, at the time of the accident and injury to said R. O. Dunning, the plaintiff, he was an employé of said Railroad Company, and was a member of said Relief Department, having become a member thereof in consequence of his employment by said company, prior to his said injury.

"That, on account of the injuries arising from said accident, and the disabilities to which the said R. O. Dunning was subjected by reason of said injuries, sick benefits to which he was entitled under the rules and regulations of said Relief Department had been paid to him, and, in addition, said Relief Department had provided him with the medical and surgical attention which the plaintiff was then entitled to receive from the funds maintained by said Relief Department.

"That one of the regulations of said Relief Department by which plaintiff agreed to be bound provided that in case of injury to a member he may elect to accept benefits in pursuance with said regulations, or to prosecute such claim as he may have at law against said company, and that the acceptance of benefits shall operate as a release and satisfaction of all claims against the company arising from or growing out of said injury; and the defendant alleges that the plaintiff, by reason of the acceptance of said sick benefits from said Relief Department, and by reason of the payment of his medical and surgical expenses as aforesaid by the Relief Department so operated by the defendant company in conjunction with its employés, he being a member thereof in good standing at the time of his injury, has, under the rules and regulations of said Relief Department, released, discharged, and quitclaimed the defendant company from any and all claims for damages that might have been, or could otherwise be, asserted by him against the defendant company."

A similar plea in Myer's Case alleged the payment to him of the sick benefits and medical and surgical attention to which he was entitled.

The two cases, by agreement of the parties, were tried together by the same jury, and a verdict was returned in favor of the plaintiff, Dunning, for $2,500, and in favor of Myers for $1,000, and judgments were entered thereon.

Two rulings of the Circuit Court were duly excepted to, and are before us on the writs of error. The first is the ruling holding that the cases were rightfully removed from the state courts, which is assigned as error by the plaintiffs, and the second, the ruling which was excepted to and assigned as error by the defendant, that the special plea was not a good defence.

As to the right of removal the special master found the following facts:

That in 1898, by an act of the General Assembly of Virginia (Laws 1897–98, p. 674, c. 635), the Atlantic Coast Line Railroad Company of Virginia was created by the consolidation of several Virginia railroad corporations which thereafter ceased to exist. That, prior to July 18, 1898, a number of South Carolina railroad companies were, by an act of South Carolina, permitted to consolidate and become one company under the name of the "Atlantic Coast Line Company of South Carolina," and said corporation was duly organized under said act, and the other corporations were merged into it and ceased to exercise any corporate functions. That the railroads operated by the Atlantic Coast Line Railroad of Virginia and those operated by the Atlantic Coast Line Railroad of South Carolina formed a continuous line of railroad, and, by the general law of South Carolina, any railroad company organized under the laws of that state operating a railroad either wholly within, or partly within and partly without, that state was authorized to merge and consolidate its capital stock, franchise, and property with those of any other railroad company or companies organized or operated under the laws of that state or any other state whenever the companies proposing to be consolidated formed a continuous line either with each other or by means of an intervening railroad. That, on January 12, 1900, the General Assembly of Virginia authorized the Atlantic Coast Line Railroad Company of Virginia to change its name and to increase its stock, and enlarge its powers, and authorized it to lease, and consolidate with itself, other corporations; and, thereafter, on April 18, 1900, the Atlantic Coast Line Railroad Company, by deed of bargain and sale duly recorded, became the owner of the property and franchise of other railroads chartered by other states, including the Atlantic Coast Line Railroad Company of South Carolina, and said company and the other railroad companies so acquired ceased to exist or to exercise any of their corporate powers or functions, and all their rights, properties, and franchises became vested in and were controlled by the Atlantic Coast Line Railroad Company of Virginia. That the General Assembly of South Carolina, on March 9, 1896 (Laws 1896, p. 114, § 1), had passed an act requiring that every railroad corporation created by any other state, desiring to own or carry on business or exercise any corporate function in South Carolina, should first file in the office of the Secretary of State a copy of its charter, and cause a copy to be recorded in each county in which it desired to carry on its business or own property, and that the Atlantic Coast Line Railroad Company of Virginia had complied with that law. That, as authorized by the amendment to its charter passed by the General Assembly of Virginia, January 12, 1900 (Laws 1899–1900, p. 24, c. 18), the name of the Atlantic Coast Line Railroad Company of Virginia was changed to the Atlantic Coast Line Railroad Company, and thereafter the said corporation, by its new name, controlled and operated the property and franchises formerly belonging to the Atlantic Coast Line Railroad Company of South Carolina, the stock of said Atlantic Coast Line Railroad Com-

pany of South Carolina being retired and canceled and stock of the new company issued in exchange therefor. That on April 10, 1902, the Atlantic Coast Line Railroad Company which by virtue of the change of name and the acts of the General Assembly of the state of Virginia was the successor of the Atlantic Railroad Company of Virginia, and which by deeds of conveyance owned and operated the lines of railroad formerly belonging to the Atlantic Coast Line Railroad of Virginia, the Wilmington & Weldon Railroad Company, and the Atlantic Coast Line Railroad Company of South Carolina, and which by filing and recording its charter as required by the law of South Carolina, was authorized to do business in South Carolina, entered into an agreement of consolidation and merger with the Savannah, Florida & Western Railway Company a corporation duly established and existing under the laws of Georgia, Florida, Alabama, and South Carolina, by which it was agreed that the stock of the Savannah, Florida & Western Railway Company should be retired and canceled and stock of the Atlantic Coast Line Railroad Company issued therefor; and it was further provided that the said Savannah, Florida & Western Railway Company, and all its capital stock, property, and franchises, were thereby merged, united, and consolidated with the Atlantic Coast Line Railroad Company so as to form a merged, united, and consolidated company. That the said merger, union, and consolidation should be with the Atlantic Coast Line Railroad Company, which was to continue as the name of the consolidated company and the principal office or place of business of the said company in the city of Richmond, Va., should continue to be the principal office or place of business of the consolidated company, and that the 10 directors and officers of the Atlantic Coast Line Railroad Company should be the first directors and officers of the consolidated company, and the place of holding the first election of directors of the consolidated company should be the city of Richmond, Va. That in 1902 the General Assembly of South Carolina passed the following act:

"That each and every railroad company created under and by virtue of the laws of any government or state other than this state and now operating any railroad in this state either as the owners thereof or otherwise or carrying on any business, or exercising any corporate franchise in this state, shall, on or before the 1st day of January, 1902, apply for a charter of incorporation under the laws of this state in the manner directed by section 1 of this act, and no such railroad shall carry on business or exercise any corporate franchise in this state after said date without having complied with the provisions of this act." (Laws 1902, p. 1053, § 2.)

That thereafter, at a meeting of the stockholders of the Atlantic Coast Line Railroad Company, held in Richmond, Va., May 12, 1902, it was resolved that the state of South Carolina be requested to issue to Henry Walters and others a charter as a merged, united, and consolidated body politic and corporation in perpetuity, under the name of the Atlantic Coast Line Railroad Company, and on May 13, 1902, by his certificate, the Secretary of State of South Carolina did issue to the said Henry Walters and others, and such persons as were then, or might thereafter become, associated with them as the owners and stock-

holders of the merged, united, and consolidated company, and their successors, a charter as a merged, united, and consolidated body politic, under the name of the "Atlantic Coast Line Railroad Company," having, possessing, and enjoying each and every and all rights, powers, and privileges, immunities, and franchises whatsoever as set forth in said articles of agreement and consolidation, and each and every and all of the rights, power and privileges, immunities and franchises of every nature whatsoever granted to, held, possessed, or enjoyed by each of the constituent corporations merging, uniting, and consolidating into the Atlantic Coast Line Company, not in conflict with the terms and provisions of said articles of agreement and consolidation.

The special master found as a fact that no other use was made of the above certificate issued by the Secretary of State of South Carolina, and that there had been no organization under the same; and it is also a fact appearing in the record that the Henry Walters and the others named in the certificate were officers and directors of the Virginia corporation. The special master also found that, at the time the causes of action arose and at the times mentioned in the several complaints, the Atlantic Coast Line Railroad Company, as the successor of the Atlantic Coast Line Company of Virginia, and originally deriving its corporate existence from the state of Virginia, was, and is, by virtue of the consolidation agreement and deed mentioned, the owner of the lines of railroad upon which the injuries occurred on which said suits were brought, and was and is operating and managing said line of railroad and doing business in the state of South Carolina by virtue of its compliance with the laws of said state.

We are satisfied from the facts so found that the corporation which owned and was operating the railroad on which the plaintiffs were injured, and of which they were employés, was a Virginia corporation. The corporation known as the "Atlantic Coast Line Railroad Company of South Carolina" had been merged with the Virginia corporation, which had become the owner of all its property and franchises; its stock had been retired and canceled, and it had ceased to perform any corporate functions. It is true the Virginia corporation had, in compliance with the requirement of the law of South Carolina, applied for and received the certificate of the Secretary of State of South Carolina mentioned, dated May 13, 1902. But that certificate was never used to organize or create a new South Carolina corporation, and the contention that it had the effect to make a South Carolina corporation out of a corporation already existing and created by Virginia does not seem to us sustainable.

It is clear, we think, that all the South Carolina corporations were merged into the Virginia corporation, and, losing their identity, ceased to exist. Yazoo & Missouri Ry. Co. v. Adams, 180 U. S. 19, 21 Sup. Ct. 240, 45 L. Ed. 395. In St. Louis & San Francisco Railway Company v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802, often referred to as the "James Case," it appeared that a corporation of Missouri owned and operated a railroad in Arkansas which it had purchased, as allowed by the Arkansas law, from certain Arkansas railroad corporations. It was provided by the law of Arkansas that every rail-

road corporation of any other state leasing or purchasing any railroad in Arkansas should file a copy of its articles of incorporation with its Secretary of State, and should thereupon become a corporation of Arkansas, "anything in its articles of incorporation or charter to the contrary notwithstanding." The Supreme Court held that by complying with that law the Missouri corporation, although it might for some purposes be treated as a domestic corporation of Arkansas, remained, so far as jurisdiction of the federal court was concerned, a corporation of Missouri, the state which created it. The court said (page 562 of 161 U. S., and page 627 of 16 Sup. Ct. [40 L. Ed. 802]):

"The presumption that a corporation is composed of citizens of the state which created it accompanies such corporation when it does business in another state, and it may sue or be sued in the federal courts in such other state as a citizen of the state of its original creation.

"We are now asked to extend the doctrine of indisputable citizenship so that if a corporation of one state, indisputably taken, for the purpose of federal jurisdiction, to be composed of citizens of such state, is authorized by the law of another state to do business therein, and to be endowed, for local purposes, with all the powers and privileges of a domestic corporation, such adopted corporation shall be deemed to be composed of citizens of the second state, in such a sense as to confer jurisdiction on the federal courts at the suit of a citizen of the state of its original creation. We are unwilling to sanction such an extension of a doctrine which, as heretofore established, went to the very verge of judicial power."

In the case of Louisville, New Albany & Chicago Railway Company v. Louisville Trust Company, 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081, the plaintiff was a railroad corporation created under the laws of Indiana. Subsequently, the Legislature of Kentucky passed an act (2 Laws 1879–80, page 233, c. 858), the first section of which read:

"Section 1. The Louisville, New Albany and Chicago Railway Company, a corporation organized under the laws of the state of Indiana, is hereby constituted a corporation, with power to sue and be sued," etc.

The second section gave to the corporation power to build connecting lines in Kentucky and to condemn all property required. And the third section directed how condemnation of real estate in the courts of Kentucky should be conducted. This power of condemnation, the corporation accepted and exercised.

The Supreme Court said (page 563 of 174 U. S., and page 821 of 19 Sup. Ct. [43 L. Ed. 1081]):

"As to jurisdiction, it being clear that the plaintiff was first created a corporation of the state of Indiana, even if it was afterwards created a corporation of the state of Kentucky also, it was, and remained, for purpose of jurisdiction of the courts of the United States, a citizen of Indiana, the state by which it was originally created. It could neither have brought suit as a corporation of both states against a corporation or other citizen of either state, nor could it have sued or been sued as a corporation of Kentucky in any court of the United States."

In Southern Railway Company v. Allison, 190 U. S. 326, 23 Sup. Ct. 713, 47 L. Ed. 1078, on writ of error to the Supreme Court of North Carolina, the Supreme Court of the United States reaffirmed the cases heretofore cited, and distinguished them from the case of Memphis & Charleston Railroad Company v. Alabama, 107 U. S. 581,

2 Sup. Ct. 432, 27 L. Ed. 518. In the Allison Case, the defendant, the Southern Railway Company, was a corporation of Virginia, and, desiring to operate a railroad in North Carolina, it complied with the law of North Carolina which required it to file a copy of its charter in the office of the Secretary of State and declared that—

"it shall thereupon immediately become a corporation of this state and shall enjoy the rights and privileges and be subject to the liability of corporations of this state the same as if such corporation had been originally created by the laws of this state. It may sue and be sued in all the courts of this state and be subject to the jurisdiction of the courts of this state as fully as if such corporation were originally created under the laws of the state of North Carolina."

The Supreme Court held that the Southern Railway Company was not a citizen of North Carolina as far as regards the jurisdiction of the federal courts, and that the order of removal withdrew the case from the state court, the Supreme Court of the United States feeling bound to adhere to its own decisions on the subject, notwithstanding the ruling of the Supreme Court of North Carolina to the contrary.

Guided by the ruling of the Supreme Court in similar cases, we think the decision of the Circuit Court refusing to remand the cases was undoubtedly right.

## As to the Special Plea of Payment of Benefits by the Atlantic Coast Line Relief Department.

To the ruling of the Circuit Court on this defense, the defendant railroad company excepted, and the writ of error sued out by it brings that ruling to this court for examination.

Both Dunning and Myers, prior to 1902, had been members of the Plant System Relief & Hospital Department, and, when the railroads of that system were acquired by the Atlantic Coast Line Railroad Company, they, some time in 1903, became members in the Atlantic Coast Line Relief Department, established by the defendant and subject to its rules and regulations, by which it was agreed that the acceptance of benefits for injury should operate as a release and satisfaction of all claims against the company for damages arising or growing out of the injury.

The Legislature of South Carolina by an act approved March 7, 1905 (22 St. at Large, p. 962), enacted as follows:

"Section 1. Be it enacted by the General Assembly of the state of South Carolina, that when any corporation, firm or individual runs or operates what is usually called a relief department for its employees, the members of which are required or permitted to pay dues, fees, money or other compensation, by whatever name called, to be entitled to the benefit thereof, upon the death or injury of the employee, a member of such relief department, such corporation, firm or individual, so running or operating the same be, and is hereby, required to pay to the person entitled to the same, the amount it was agreed the employee, his heirs or other beneficiary under such contract should receive from such relief department; the acceptance of which amount shall not operate to estop or in any way bar the right of such employee or his personal representative from recovering damages of such corporation, firm or individual for personal injury or death caused by the negligence of such corporation, firm or individual, their servants or agents, as are now provided by law; and any contract or agreement to the contrary, or any receipt or

release given in consideration of the payment of such sum, is and shall be null and void.

"Sec. 2. That all acts. inconsistent with this act are hereby repealed.

"Sec. 3. That this act shall take effect immediately on its approval."

After the accident, Dunning was paid, and accepted, sick benefits to which by his membership he was entitled, at the rate of $2.50 per day, from the date of the accident to February, 1907, a period of over 10 months, amounting to about $780, and, in addition, medical attention; and Myers was paid and accepted benefits, during the same period, at the rate of $1 a day, amounting to about $312, being the amount to which his membership entitled him. These payments were made to the plaintiffs monthly by drafts drawn by the superintendent of the Relief Department on the treasurer of the railroad company to the order of Dunning or Myers, and indorsed by them when paid, each draft containing the following stipulation:

"This amount is in payment of accrued benefits and is paid and accepted under the rules and regulations of the Relief Department."

These benefits they were entitled to receive for a period of 52 weeks, and afterwards at half those rates, during the continuance of the disability.

There had been an act of South Carolina passed in 1893 referring solely to railroad companies. It was repealed by the act of March 7, 1905, which refers to all corporations, firms, and individuals maintaining a relief department for their employés. The plaintiffs contend that this act is void, because unconstitutional in that it is in contravention of section 1 of the fourteenth amendment of the Constitution of the United States, declaring that no state shall make or enforce any law abridging the privileges or immunities of citizens of the United States, nor deprive any person of life, liberty, or property without due process of law, or deny to any person the equal protection of the laws. And they contend it is also in contravention of article 1, § 5, of the Constitution of South Carolina, which is to the same effect.

A fair statement of the scheme and working of the Relief Department is found in the following extract from the defendant's brief:

"The employés of the company who enter into the contract of employment with the railroad company become members of this Relief Association, and contribute monthly, along with contributions from the railroad company, for the maintenance of a fund for the relief of the employés. From this fund death benefits are paid to the employés, whether the death of the employé arises from accident or natural causes, negligence of the company, negligence of the employé, or otherwise; and likewise daily benefits are paid to the employé in case of sickness arising from accident or natural causes, negligence of the railroad company, negligence of the employé, or otherwise. In addition to this, the member, in case of sickness arising from accident or natural causes, receives free medical and hospital treatment. From the testimony of Dr. G. G. Thomas, superintendent of the Relief Department of the Atlantic Coast Line Railroad Company, which in every respect is undisputed, it will appear that contributions by the members from the beginning of the operation of the Atlantic Coast Line Relief Department have amounted to the sum of $728,257, and the contribution of the railroad company has equaled the sum of $268,000. It will thus appear that the Atlantic Coast Line Railroad Company has contributed a sum to the Relief Department Fund to the extent of more than one-third of the amount contributed by the members. The Atlantic Coast Line Railroad Company pays every expense and guar-

antees every obligation of the Relief Department. It holds at this time, as treasurer of the fund, not exceeding $27,000, paying interest thereon; yet it guarantees to make good every obligation of said Relief Department, which obligations to its members now outstanding exceed $6,000,000.

"The provision of the Relief Department contract between its members and the railroad company, which is brought in question in these cases, is to the effect that if, after injury, a member thereof voluntarily accepts the benefits, the acceptance of the benefits will amount to an accord and satisfaction with the said railroad company of all claims arising out of such injury. It will thus be seen that in the very great majority of cases, where the member is injured by his own carelessness or mere accident, or becomes sick from natural causes, he is entitled to benefits which he would not otherwise be entitled to but for his being a member of the Relief Department. and to this fund, from which he is paid these benefits, the railroad company contributes largely. In every case, however, if the member accepts these benefits he cannot sue. On the other hand, in no case is the member required to accept the benefits from the Relief Department. He is left to his option to accept these benefits or bring his action for damages against the railroad company. It is only where he elects to accept these benefits that it amounts to an accord and satisfaction of his claims against the company."

By a great number of carefully considered adjudications of the courts, both state and federal, contracts of this character have been upheld, and determined not to be against a sound public policy, but distinctly beneficial to the employé as well as wise on the part of the employer. It was so ruled in the Supreme Court of South Carolina, by a divided court, in Johnson v. Railway Company, 55 S. C. 152, 32 S. E. 2, 33 S. E. 174, 44 L. R. A. 645. In that case, in the opinion of Chief Justice McIver, it is pointed out that such a contract, so far from securing to the employer immunity from liability for damages sustained by reason of his own negligence or that of his servants and agents, in fact gives to the employé a certainty of some compensation, whether the injury was caused by the employer's neglect or not, with the option to the employé of pursuing his ordinary legal remedies if he elects to do so, and not to receive the benefits which his contract affords him.

Among some of the more notable cases in which it has been held that similar contracts are not against public policy, but are to be upheld as wise and beneficial, are the following, which show a remarkable unanimity: Johnson v. Railroad Co., 163 Pa. 127, 29 Atl. 854; Ringle v. Penna. R. R. Co., 164 Pa. 529, 30 Atl. 492, 44 Am. St. Rep. 628; Pittsburgh, C., C. & St. L. Ry. Co. v. Moore, 152 Ind. 345, 53 N. E. 290, 44 L. R. A. 638; Beck v. Pennsylvania Co., 63 N. J. Law, 232, 43 Atl. 908, 76 Am. St. Rep. 211; State v. Pittsburg, etc., R. R. Co., 68 Ohio St. 9, 67 N. E. 93, 64 L. R. A. 405; Petty v. Brunswick, etc., R. R. Co., 109 Ga. 666, 35 S. E. 82; Owens v. B. & O. R. R. Co. (C. C.) 35 Fed. 715, 1 L. R. A. 75; Otis v. Pennsylvania R. R. Co. (C. C.) 71 Fed. 136; Shaver v. Pennsylvania R. R. Co. (C. C.) 71 Fed. 931; Fuller v. B. & O. R. R. Co., 67 Md. 433, 10 Atl. 237; Hamilton v. St. Louis, K. & N. W. R. Co. (C. C.) 118 Fed. 92.

We take it that it must be accepted that the contract is a beneficial one to the employé, and not against sound public policy.

There remains to be considered whether the act of South Carolina of March 7, 1905, can have the effect of rendering the contract void by declaring that the acceptance by the employé of the benefits of the contract shall not estop him from recovering damages, notwithstanding

he may have given a release; that is to say, that he may accept the benefits of the contract so far as it is beneficial to him, but shall not be bound by the other term of the contract which releases the employer. It is to be noted that in the present case the plaintiffs received the sick benefits for over 10 months after the accident, and for 6 months after they had brought their suits.

The validity of similar legislation has been frequently the subject of judicial adjudication, and the courts have quite uniformly decided adversely to its validity. The act of South Carolina now in question was before the court of common pleas of Charleston county, S. C., in the case of Sturgess v. Atlantic Coast Line Railroad, 80 S. C. 167, 61 S. E. 261, and Circuit Judge Purdy, in a very careful and learned opinion, held that the employé after being injured had a right to elect which remedy he would pursue, and if he elected to take the benefits and release the railroad company he was bound by that election, and that the attempt of the Legislature to give him both remedies, notwithstanding his release, was beyond legislative power. And the Circuit Judge also held that the act was an unconstitutional interference with the right of the employé and the railroad company to contract. The Sturgess Case was appealed to the Supreme Court of South Carolina, and was affirmed by a divided court. Sturgess v. Atlantic Coast Line R. R., 80 S. C. 167, 61 S. E. 261. Also in the circuit court for Charleston county, it was held by Circuit Judge Watts that an employé, having elected to receive benefits after the injury, was estopped from bringing an action for damages. This decision on appeal to the Supreme Court of South Carolina was also affirmed by a divided court. Johnson v. Railway Co., 55 S. C. 152, 32 S. E. 2, 33 S. E. 174, 44 L. R. A. 645. We think, therefore, we may take it to have been the law of South Carolina at the time the present case was tried, and, as far as we have any information, now is the law of South Carolina, that whenever an employé has after the accident elected to receive benefits as a member of the Relief Department, and has released the railroad company, he cannot maintain an action for damages notwithstanding the South Carolina act of assembly.

As by the common law the contract of the Relief Department with its members is valid, and the act of South Carolina by her own courts is held to be inoperative to invalidate such a contract, we think the payment of the benefits and the release is a good defense in South Carolina. With respect to the validity of the contract under South Carolina statute, it is to be noticed that it does not forbid making such a contract, but, having been made, the statute in terms requires the employer to pay the employé the amount of benefits to which by the contract the employé is entitled, and then provides that notwithstanding the acceptance of payment the employer shall still continue liable to the employé, if the injury was caused by negligence of the employer, to the same extent as if the employé had not elected to accept and been paid the benefits of the contract. This is different from section 3 of the act of Congress of June 11, 1906, c. 3073, 34 Stat. 232 (U. S. Comp. St. Supp. 1907, p. 891), relating to the liability of interstate carriers to their employés (passed since this suit was instituted), which,

while it provides that no contract such as the one in question nor the acceptance of benefits under it shall be a bar to an action of damages against the carrier, provides that the carrier may set off in any such action the amount which it has contributed toward the benefits so paid. This provision would seem to afford an element of fairness and equality, which the South Carolina statute lacks, in that it does not require one of the parties to the contract to fulfill his obligations and release the other party.

We think the Circuit Court should have ruled that the acceptance by the plaintiffs of the benefits paid to them by the Relief Department was, under the facts proved by the defendant, and under the rulings of the South Carolina Courts with regard to the statute in question, a good defense to the action, and for that reason the judgment in each case is reversed.