# McNAMARA v. WASHINGTON TERMINAL COMPANY.

EMPLOYERS' LIABILITY ACT; MASTER AND SERVANT; RAILROADS; CONSTI-
TUTIONAL LAW.

1. Sec. 1 of the employers' liability act of Congress of June 11, 1906 (34
   Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1909, p. 1148), as
   applied to the District of Columbia, is constitutional. (Following
   *Hyde* v. *Southern R. Co.* 31 App. D. C. 466, and *Philadelphia, B. & W.*
   *R. Co.* v. *Tucker*, ante, 123.)

2. A contract of employment which a railroad requires all of its employees
   to enter into, and by which every employee agrees that in the event
   of the acceptance by him of certain relief benefits referred to in the
   contract, which are made up from deductions from the wages of the
   employees and contributions by the company, the railroad company
   will be relieved of all liability growing out of any injury received
   while in the employ of the company, is within the meaning of sec. 3
   of the employers' liability act of Congress of June 11, 1906 (34 Stat.
   at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1909, p. 148), pro-
   viding that "no contract of employment, insurance, relief benefit, or
   indemnity for injury or death, entered into by or on behalf of any
   employee, nor the acceptance of any such insurance, relief benefit, or
   indemnity by the person entitled thereto, shall constitute any bar
   or defense to any. action brought to recover damages for personal in-
   juries to or death of such employee; Provided, however, that upon
   the trial of such action against any common carrier, the defendant
   may set off therein any sum it has contributed toward any such in-
   surance, relief benefit, or indemnity that may have been paid to the
   injured employee, or, in case of his death, to his personal representa-
   tive."

3. Sec. 3 of the employers' liability act of Congress of June 11, 1906 (34
   Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1909, p. 1148), is
   not, as applied to this District, an unconstitutional encroachment
   by Congress upon the right of free contract guaranteed in general
   terms by the 5th Amendment of the Federal Constitution, but is con-
   stitutional and valid as a reasonable and necessary means of effecting
   the purpose of the act as declared in sec. 1.

4. The power of Congress to enact laws applicable to the District of Columbia and the Territories is plenary, and not dependent upon the interstate commerce clause of the Federal Constitution.

No. 2121.   Submitted April 7, 1910.   Decided May 10, 1910.

HEARING on an appeal by the plaintiff (specially allowed) from an interlocutory order of the Supreme Court of the District of Columbia overruling his demurrer to a special plea in bar to a declaration to recover damages for alleged personal injuries.                                      *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decision of the supreme court of the District of Columbia overruling appellant's demurrer to a special plea in bar.

On January 22d, 1908, while appellant, Edward McNamara, was actively engaged in the duties of a locomotive fireman in this District, a collision occurred which, he alleges in his declaration, was the result of the negligence of the employees or agents of either or both appellees, the Washington Terminal Company, a corporation, and the Baltimore & Ohio Railroad Company, and as a result of which he suffered the loss of his right arm, and sustained other serious injuries.   To plaintiff's declaration defendants filed two pleas,—the plea of not guilty, and a special plea in bar.   In the plea in bar it was alleged that the plaintiff, on the 31st day of August, 1907, applied for, and on the 4th day of September following was admitted to, membership in the relief department of the Baltimore & Ohio Railroad Company, and that he was a member of said department when he sustained the injuries set forth in his declaration.   The plea then sets out in detail said application, from which it appears that the plaintiff, as a condition to his employment by the defendant railroad company, agreed "to be bound by all the regulations of said department hereafter adopted, applicable to the relief feature."   It was also agreed "that the said company, by its proper agents and in the manner provided in said regulations,

shall apply monthly, in advance, from the first wages earned by me under said employment, in each calendar month, sums at the rate of $2 per month as a contribution to the relief feature of said department, for the purpose of securing the benefits provided by said regulations, for a member of Class B to myself, or, in the event of my death, to my wife, Annie, 314 H—, Washington, D. C., or to whom I may hereafter from time to time designate in writing by way of substitution, with the written consent of the superintendent; or, if no such beneficiary be then living, to my next of kin (as determined by the laws of the State of Maryland), in accordance with regulation No. 18,—subject to all the provisions and requirements of said regulations." The application continues: "I further agree that in consideration of the contributions of said company to the relief department, and of the guaranty by it of the payment of the benefits aforesaid, the acceptance of benefits from the said relief department for injury or death shall operate as a release of all claims against said company, or any company owning or operating its branches or divisions, or any company over whose railroad, right of way, or property the said Baltimore & Ohio Railroad Company shall have the right to run or operate its engines or cars or send its employees in the performance of their duty, for damages by reason of such injury or death, which could be made by or through me; and that the superintendent may require, as a condition precedent to the payment of such benefits, that all acts by him deemed appropriate and necessary to effect the full relief and discharge of the said companies from all such claims be done by those who might bring suit for damages by reason of such injury or death; and also, that the bringing of such a suit by me, my beneficiary or legal representative, or for the use of my beneficiary alone or with others, or the payment by any of the companies aforesaid of damages for such injury or death recovered in any suit or determined by compromise, or of any costs incurred therein, shall operate as a release in full to the relief department of all claims by reason of my membership therein."

The plea then proceeds to allege that the relief department

was divided into three sections, known as the relief, savings, and pension features, the accounts of which were kept separate; that the relief feature afforded relief to persons when they became disabled by injury or sickness, or to their families in the event of their death.   The savings feature "afforded opportunity to employees of said defendant companies, of which plaintiff was one, and their near relatives, to deposit their savings, and earn interest thereon."   The pension feature was for the advantage of employees who by reason of age or infirmity were no longer able to work.   The plea further stated that the defendant railroad company "was obligated to contribute to the relief department $6,000 annually, for the support of the relief feature, or, when not needed for that feature, for the support of the pension feature; $75,000 annually for the support of the pension feature; $10,000 annually for the physical examination of employees;" that said company had for many years fulfilled said obligations; that Class B, of which plaintiff was a member, was composed of those receiving more than $35, and not more than $50, per month; that under said regulations plaintiff, at the time of his injuries, was entitled to the following benefits: "First. When totally disabled by accidental injuries received in the discharge of duty in the service, for each day, other than Sundays and legal holidays, during a period not exceeding fifty-two weeks, at the rate of $1 a day, and at half said rate during the continuance of the disability after the first fifty-two weeks; and if totally disabled by sickness, or from any other cause other than accidental injuries received in the discharge of duty in the service, for each day, other than Sundays and legal holidays, after the first six working days of such disability, and for a period of not exceeding fifty-two weeks, at the rate of $1 a day; and at death from accidental injuries his beneficiaries were entitled to the sum of $1,000, and at death from any cause other than accidental injuries, the sum of $500;" that in addition plaintiff was entitled to the payment of fees for surgical attendance, and to an artificial limb; that the bringing of a suit against the company on account of injuries worked a forfeiture of all claims for benefits; that to entitle an employee

to the benefit of the pension feature he must have been a member of the relief feature for four consecutive years, and have served the company for ten consecutive years, and have reached the age of sixty-five.

The plea further avers that "the plaintiff voluntarily accepted, under said rules and regulations of the relief department, the benefits due him," etc. To this plea, as above stated, plaintiff demurred; the demurrer was overruled; whereupon this special appeal was allowed.

*Mr. A. E. L. Leckie, Mr. Creed M. Fulton, Mr. Joseph W. Cox,* and *Mr. John A. Kratz, Jr.,* for the appellant.

*Mr. George E. Hamilton, Mr. John W. Yerkes, Mr. M. J. Colbert,* and *Mr. John J. Hamilton,* for the appellees:

1. The relief department agreement, and the regulations controlling, are not immoral, unconscionable, or against public policy; and plaintiff is bound by his acceptance of their terms, by his voluntary acceptance, after his injury, of benefits which, under the agreement and regulations, he had the right to accept or reject, and by the execution and delivery of the releases voluntarily given by him.

The demurrer in *R. Co.* v. *Miller,* 76 Fed. 439, was sustained not upon the ground that the contract was immoral or contrary to public policy, but because of the failure of the plea to set out with fullness and certainty the agreement which did exist between the railroad, through the relief department, and its employees.

If the agreements and contract relied upon undertook to, and did, release the defendant railroad company in advance from the results of its negligence toward the plaintiff, or if the contract provided for a definite fixed sum to be accepted by the plaintiff in full discharge of his claim, prohibiting absolutely the bringing of an action, then we admit the contract might be invalid as against public policy. This would be an attempt to contract against liability for negligence in advance of in-

jury. But the contract presented clothes the employee with full power of election, after he sustains the injury, as to whether he will sue or accept benefits from the association. These contracts have been not only upheld by the courts, but have been declared beneficent and helpful. *Fuller* v. *B. & O. Employee's Relief Asso.* 67 Md. 433; *Schaefer* v. *Penn. R. Co.* 71 Fed. 931; *Otis* v. *Penn. R. Co.* 71 Fed. 136; *C. B. & Q. R. Co.* v. *Bell,* 44 Neb. 44; *Pittsburgh & C. R. Co.* v. *Cox,* 55 Ohio St. 497; *Brown* v. *B. & O. R. Co.* 6 App. D. C. 244. See *Spitze* v. *Baltimore & O. R. Co.* 75 Md. 162; *Pittsburg, &c., R. R. Co.* v. *Moore* (Ind.) 53 N. E. 209; *Pittsburg, &c., R. R. Co.* v. *Montgomery* (Ind.) 49 N. E. 582; *Atlantic Coast Line R. Co.* v. *Dunning,* 166 Fed. 850.

2. Sec. 3 of the employers' liability act of 1906 does not cover or affect contracts and agreements wherein there is no stipulation by the employee that in case of injury he will accept certain benefits and payments in full satisfaction and discharge of any legal claim he may have for damages against the railroad company.

The contract at bar preserves the plaintiff's right of action against the defendant for damages, undiminished and unaffected from the date of the signing of the contract until after the injury, and until after his voluntary acceptance of the benefits paid.

The plaintiff, after the injury, had, under the terms of the agreement and regulations, the unrestrained privilege and option, either of bringing suit or of accepting the sums due him under the agreement. *Johnson* v. *Philadelphia & R. R. Co.* 163 Pa. 127; *Beck* v. *Penn. R. R. Co.* 63 N. J. L. 232; *Lease* v. *Penn. R. R. Co.* 10 Ind. App. 47; *P. C. C. & St. L. R. Co.* v. *Cox,* 55 Ohio St. 497; *Hamilton* v. *R. R. Co.* 118 Fed. 92; *Donald* v. *R. R. Co.* 61 N. W. 971; *Pittsburg, C. C. & St. L. R. R. Co.* v. *Moore,* 53 N. E. 290; *Petty* v. *R. R. Co.* 35 S. E. 84.

3. If the language of sec. 3 of the employers' liability act is broad enough to include the agreement, acceptance of benefits, and release under consideration, then we insist that this section

is void and unconstitutional, being obnoxious to the 5th Article of Amendment of the Constitution of the United States; and the question of the constitutionality of said sec. 3 of this act has not been considered or determined by the Supreme Court of the United States, or by this court. *Algeyer* v. *Louisiana,* 165 U. S. 578; *Lochmer* v. *New York,* 198 U. S. 45; *Adair* v. *United States,* 208 U. S. 161; *Railroad Co.* v. *Cox,* 55 Ohio St. 515; *Sturgis* v. *Atlantic Coast Line Co.* 60 S. E. 641; *State* v. *Julow,* 31 S. W. 781; *Hoxie* v. *New York, N. H. & H. R. R. Co.* 73 At. 754; *B. & O. R. R. Co.* v. *Voigt,* 176 U. S. 505; *Atlantic Coast Line R. R. Co.* v. *Dunning,* 166 Fed. 850.

Mr. Justice ROBB delivered the opinion of the Court:

Sec. 1 of the employers' liability act of June 11th, 1906 (34 Stat. at L. 232, chap. 3073, U. S. Comp. Stat. Supp. 1909, p. 1148), as applied to the District of Columbia and the Territories, has been held to be within the constitutional authority of Congress. *El Paso & N. E. R. Co.* v. *Gutierrez,* decided Nov. 15th, 1909, 215 U. S. 87, 54 L. ed. 106, 30 Sup. Ct. Rep. 21; *Hyde* v. *Southern R. Co.* 31 App. D. C. 466; *Philadelphia, B. & W. R. Co.* v. *Tucker,* present term, ante, 123. We are here concerned with sec. 3 of the act, which provides: "That no contract of employment, insurance, relief benefit, or indemnity for injury or death, entered into by or on behalf of any employee, nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto, shall constitute any bar or defense to any action brought to recover damages for personal injuries to or death of such employee: Provided, however, That upon the trial of such action against any common carrier the defendant may set off therein any sum it has contributed toward any such insurance, relief benefit, or indemnity, that may have been paid to the injured employee, or, in case of his death, to his personal representative."

First, is the language of sec. 3 sufficiently comprehensive to embrace the contract set up in defense of this action? The first part of the section is apparently designed to prevent a carrier

from requiring an employee, when he enters its service, to agree to accept a stated amount in the event of injury; in other words, to substitute one measure of liability for that imposed by the statute. The words, "nor the acceptance of any such insurance, relief benefit, or indemnity by the person entitled thereto," are certainly broad enough, if given their ordinary meaning, to include the contract here pleaded. It is impossible to escape the conclusion that Congress, in using these words, intended to cover a case such as this, and thus prevent the carrier from withholding any "insurance, relief benefit, or indemnity" until the person entitled thereto executes a release for all claims for damages. In the one case, but for this statute, the employee would waive his right of action by his contract of employment, while in the other the acceptance of that for which he paid, and to which he should be entitled, would constitute such waiver. These contracts, according to the briefs of counsel and the cases cited, are not uncommon, and we must therefore assume that Congress framed this statute with reference to them. It is apparent that this was a contract of employment in which the employee agreed that, in the event of the acceptance by him of the relief benefits to which the contract referred, the company would be relieved of all liability growing out of his injury. It thus appears that, while not bound under his contract to accept such relief benefits in lieu of damages for his injury, if he did accept them he waived his right of action. It is such a situation, we think, that this section was designed to cover. In *Atlantic Coast Line R. Co.* v. *Dunning,* 94 C. C. A. 128, 166 Fed. 850 (circuit court of appeals for the fourth circuit, Mr. Chief Justice Fuller presiding), there was before the court a statute of South Carolina providing that when any corporation, firm, or individual runs a so-called relief department requiring its employees to pay dues or fees to be entitled to benefits, such corporation, firm, or individual, upon the death or injury of an employee, shall be required to pay the person entitled to the same the amount due from such relief department; and that the acceptance of such benefits shall not prevent such employee or his personal representative from recovering damages for

personal injury. The law was declared unconstitutional; and, while the point now under consideration was not specifically raised, the contract before the court was similar to this, and the court in its opinion treated it as within the terms of the statute. It may be noted in passing that, under the South Carolina statute, the carrier was not permitted to set off, in an action against it by an employee for personal injuries, the amount contributed by it toward said so-called relief benefits. Had the court entertained a doubt as to the applicability of the statute to the contract before it, the point would not have been assumed,—especially as to do so resulted in the striking down of the act. So, too, in *McGuire* v. *Chicago, B. & Q. R. Co.* 131 Iowa, 340, — L.R.A.(N.S.) —, 108 N. W. 902, the court construed a statute which provided that no contract of insurance, relief benefit, or indemnity entered into prior to the injury, "nor the acceptance of any such relief, insurance benefit, or indemnity," should constitute any bar or defense to an action brought under the statute, to include a contract similar to this. We conclude, therefore, that we would not be justified in holding this contract not within the terms of said sec. 3.

We come now to the question whether the provisions of this section, as above interpreted, amount to an unjustifiable encroachment by the law-making power upon the right of free contract guaranteed in general terms by the 5th Amendment. In entering upon a discussion of this point, it must be borne in mind that this section was enacted for the supposed purpose of effectuating the provisions of sec. 1, which have been declared to be constitutional. It must also be borne in mind that the class of employees protected by this act are engaged in a quasi public duty involving extraordinary risks to themselves. The real question, therefore, is not so much whether this section interferes with the right of contract between the carrier and the employee, as it is whether such interference is reasonable and necessary to give proper force and effect to the general provisions of the act. Congress, having authority to enact sec. 1, clearly has authority to make the provisions of that section effective by preventing evasions of it. It may be assumed at the

outset, as contended by counsel, that contracts like the one under examination, in the absence of statute, are not against public policy; but this concession, in our opinion, falls far short of an admission that Congress was without justification in assuming that such contracts would have a direct tendency to avoid the main provisions of the act; and, unless we are satisfied beyond question that this legislation is in excess of legislative power, it is our duty to sustain it. In other words, having in mind the end which Congress, by this act, sought to accomplish, can we say that the provisions of sec. 3 have no real and necessary relation to the accomplishment of that end, but, on the contrary, are an arbitrary and needless interference with the right of contract? Unless we are forced to so conclude, then it was competent for Congress to declare the public policy prohibiting defenses based upon such contracts.

That the right of contract is subject to many limitations imposed in the interests of the general public, or to preserve the public health, morals, or safety, is, of course, not denied. The decisions of the Supreme Court of the United States are replete with declarations to that effect. In *Munn* v. *Illinois* 94 U. S. 113, 24 L. ed. 77, a statute fixing the maximum charges for the storage of grain, and prohibiting charges for larger amounts, was sustained. A California statute making it unlawful for employees to work in laundries between the hours of 10 P. M. and 6 A. M. met with the approval of the court in *Soon Hing* v. *Crowley,* 113 U. S. 703, 28 L. ed. 1145, 5 Sup. Ct. Rep. 730. In *Frisbie* v. *United States,* 157 U. S. 160, 39 L. ed. 657, 15 Sup. Ct. Rep. 586. An act of Congress limiting the fees of attorneys prosecuting pension claims was held to be within the police power. The court said: "It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. It may deny to all the right to contract for the purchase or sale of lottery tickets; to the minor the right to assume any obligations, except for the necessaries of existence; *to the common carrier the power to make any contract releasing himself from negligence,* and, indeed, may restrain all engaged in

any employment from any contract in the course of that employment which is against public policy." *Holden* v. *Hardy,* 169 U. S. 366, 42 L. ed. 780, 18 Sup. Ct. Rep. 383, involved a statute of Utah regulating the hours of labor in mines. Speaking of the right of contract, the court said: "This right of contract, however, is itself subject to certain limitations which the State may lawfully impose in the exercise of its police powers. While this power is inherent in all governments, it has doubtless been greatly expanded in its application during the past century, owing to an enormous increase in the number of occupations which are dangerous, or so far detrimental to the health of employees as to demand special precautions for their well being and protection, or the safety of adjacent property." In dealing with the capacity of the parties to contract, the court observed: "But the fact that both parties are of full age and competent to contract does not necessarily deprive the State of the power to interfere, where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself. 'The State still retains an interest in his welfare, however reckless he may be. The whole is no greater than the sum of all the parts, and when the individual health, safety, and welfare are sacrificed or neglected, the State must suffer.' " After a full review of the adjudged cases, the court held the statute to be a valid exercise of the police power of the State. An act of the legislature of the State of Tennessee, requiring the redemption in cash of store orders or other evidences of indebtedness issued by employers in lieu of wages, was held in *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13, 46 L. ed. 55, 22 Sup. Ct. Rep. 1, not to be in conflict with any provisions of the Constitution of the United States relating to contracts. A statute of the United States prohibiting the payment of seamen's wages in advance was held to be within the power of Congress in *Patterson* v. *The Eudora,* 190 U. S. 169, 47 L. ed. 1002, 23 Sup. Ct. Rep. 821; *Jacobson* v. *Massachusetts,* 197 U. S. 11, 49 L. ed. 643, 25 Sup. Ct. Rep. 358, 3 A. & E. Ann. Cas. 765, involved a law of that commonwealth making vaccination compulsory in the

discretion of a board of health in a city or town. The court, in sustaining the law, said: "The liberty secured by the Constitution of the United States to every person within its jurisdiction does not impart an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good." The legislature of Arkansas enacted a law making it unlawful to screen coal before weighing it for payment of miners' wages. This law was sustained in *McLean* v. *Arkansas,* 211 U. S. 539, 53 L. ed. 315, 29 Sup. Ct. Rep. 206. The court said: "The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power." ·

In *Adair* v. *United States,* 208 U. S. 161, 52 L. ed. 436, 28 Sup. Ct. Rep. 277, 13 A. & E. Ann. Cas. 764, the court declared unconstitutional an act of Congress making it a criminal offense for a carrier engaged in interstate commerce to discharge an employee because of his membership in a labor organization, on the ground, however, "that there is no such connection between interstate commerce and membership in a labor organization as to authorize Congress to make it a crime against the United States for an agent of an interstate carrier to discharge an employee because of such membership on his part."

The power of Congress to enact laws applicable to the District of Columbia and the Territories is plenary, and not dependent upon the interstate commerce clause of the Constitution. "When we consider," said Mr. Justice Day, in delivering the judgment of the court in *El Paso & N. E. R. Co.* v. *Gutierrez,* decided in the Supreme Court of the United States November 15th, 1909, 215 U. S. 97, 54 L. ed. —, 30 Sup. Ct. Rep. 21, "the purpose of Congress to regulate the liability of employer to employee, and its evident intention to change certain rules of the common law, which theretofore prevailed, as to the responsibility for negligence in the conduct of the business of transportation, we

think that it is apparent that, had Congress not undertaken to deal with this relation in the States where it had been regulated by local law, it would have dealt with the subject and enacted the curative provisions of the law applicable to the District of Columbia and the Territories over which its plenary power gave it the undoubted right to pass a controlling law, and to make uniform regulations governing the subject." We must also have in mind that the object of this law, and of laws of similar character, is not alone to protect and benefit employees of common carriers, but to promote the public welfare. *Johnson* v. *Southern P. Co.* 196 U. S. 17, 49 L. ed. 369, 25 Sup. Ct. Rep. 158; Mr. Justice Moody, in the *Employers' Liability Cases* (*Howard* v. *Illinois C. R. Co.*) 207 U. S. 533, 52 L. ed. 323, 28 Sup. Ct. Rep. 141. The safety of the traveling public is dependent, to a large extent, upon the safety of employees engaged in the operation of railroads. The interests of employees and passengers, in so far as the safety of either is involved, are, of necessity, mutual. In sec. 1 of the act the carrier is declared to be responsible to employees for injuries sustained through its negligence or the negligence of fellow servants. If the imposition of such responsibility upon the carrier inured to the benefit of the public, as well as to the employee,—and we think it did,—Congress had the right to take that into consideration in enacting sec. 3.

In the light of the foregoing observations, was there no justification for the apparent view of Congress that the discharge of the carrier from all responsibility under the act in a given case, because of the acceptance by an employee, after injury, of relief benefits under a contract such as this, would have a tendency to impair the force and effect of the act? In order to become an employee of the defendant railroad company the plaintiff was compelled to enter into this contract. He was also compelled under this contract, during the term of his employment, to contribute $24 per year out of his modest wages toward the relief fund, so-called, which sum was to be held in trust for him and his associates for the purposes hereinbefore stated. In other words, it was a condition precedent to his employment

that he take out insurance with the company. To be sure, the record shows that the company contributed something toward this relief benefit, if necessary, and guaranteed the payment of benefits; but it was in the interests of the company to do this, and it is apparent that the employees pay for practically all they receive under this relief feature. It is true that under this feature the employee *might* receive benefits for sickness or injury in cases in which the defendant company would be free from responsibility; but in this case the plaintiff alleges that the defendant company was responsible for his injuries, and the contract of employment requires the employee in *all* cases to forego his right of action as a condition precedent to the payment of benefits for which he has paid, and to which he should be entitled irrespective of his claim for damages based upon the negligence of his employer. Was it not competent for Congress to say that the carrier may not, after determining the amount probably necessary to pay, in accordance with a certain schedule, all damages occasioned by its negligence, compel its employees to make up a fund sufficient for that purpose, and then withhold benefits under such fund until the employee releases the carrier from further responsibility? Congress has said, through the medium of sec. 3, that in such a situation the carrier and the employee do not stand upon an equal footing, and that the acceptance by the employee, under such conditions, of the amount really due him from the relief fund, is not absolutely free from restraint and the undue influence of the employer. Was such a conclusion so unreasonable as to compel the court to strike down this provision? Railroad employees, we all know, are as a class men of small means, dependent to a large degree, if not solely, upon their wages for the support of their families. Take the case under consideration as an illustration. This man suffered the loss of his right arm, and sustained other injuries. He was, of course, completely disabled for quite a long time. He had paid for insurance with the company, but in order to get that insurance he was compelled to give a release from further responsibility, notwithstanding, if the averments of his declaration are true, that

his injuries were the direct result of the negligence of the company's servants, for which this act says the company shall be chargeable. Being in necessitous circumstances, the employee is compelled to refuse the money to which he is justly entitled, or accept it and waive the right the statute gives him. It is much easier for courts to say that such an election, under such conditions, is free from restraint, than it is for the injured employee to determine whether he shall temporarily protect his family by accepting the modest insurance for which he has paid, or bring a suit against the company, and thereby waive his right to immediate relief, and assume the risks always incident to litigation. Would such a practice tend, to any appreciable degree, to relieve the carrier of the burdens imposed upon it by this act? It seems to us that it would. Common experience teaches that employees, under such conditions, would be peculiarly liable to the undue influence of the agents of the carrier. Legal evidence of such undue influence is often difficult to obtain. Knowing the situation, knowing the leverage of the carrier, and that the parties would not be on a level, was it not competent for Congress to declare it to be public policy that all releases from liability thus obtained should not avail the carrier? Wherein lies the injustice of the provision? If the carrier has contributed to this relief fund its liability is reduced to that extent. If it honestly desires to effect a settlement with the employee, irrespective of this contract of employment and upon a new consideration, it may do so, and such a settlement, if free from duress, will be sustained. What it here seeks to do, however, is to be relieved of liability without the payment of a new consideration. Mr. Justice Stafford, in a well-considered opinion (*Potter* v. *Baltimore & O. R. Co.* 37 Wash. L. Rep. 466), sustaining this section, said: "What Congress evidently intended to do was to cut up, root and branch, this whole attempt on the part of the employer to substitute its own determination of its liability, and its own adjustment of the extent of that liability, as far as the same were embraced in the original contract of employment, and to substitute for it an

adjustment in open court, or at least an adjustment by the parties, independent of such original contract."

We shall not attempt to review all the cases in which this question has been to any extent considered, for they are not in accord, and, with few exceptions, are not in point. In almost all of the cases relied upon by counsel for appellees, there was no statute denouncing such contracts. The case of *McGuire* v. *Chicago, B. & Q. R. Co.* 131 Iowa, 340, — L.R.A.(N.S.) —, 108 N. W. 902, previously cited, is exactly in point, and contains an exhaustive, and, we think, satisfactory discussion of the question under consideration. It should be noted, however, that in the Iowa case it was optional with the employee whether he should enter the relief department or not. A statute of Iowa was originally enacted similar to sec. 1 of said act of 1906. Subsequently it was held that a contract similar to this was not void as against public policy, and that employees who accepted benefits on account of injuries received were barred from recovery of damages. Whereupon an amendment, similar to sec. 3 under consideration, was passed, and the above case arose. The court in that case said: "It should be kept in view, at all stages of this discussion, that the enactment, the validity of which is denied by the appellee, is an attempt by the legislature to protect a right which Code, sec. 2071, in its original form, conferred upon railway employees; and we think it a rule, the soundness of which cannot be successfully denied, that where the legislature, acting within its constitutional power, provides a right or confers a benefit which did not before exist, it may, in its discretion, also provide that no contract by which that right or benefit may be waived, lost, or impaired shall be of any validity whatever. That the act is reasonably adapted to effect its ostensible purpose to prevent an improvident waiver or surrender by the employee of the right conferred upon him by the law can hardly be questioned." Is it not an argument in support of the judgment of Congress in enacting sec. 3, that the legislature of Iowa found it necessary, in order fully to protect the rights originally granted, to enact the amendment considered by the court in the *McGuire Case?*

There is an important difference between the statute here involved and the one involved in the *Dunning Case,* 94 C. C. A. 128, 166 Fed. 850. There the carrier, even though it had contributed largely to the relief fund out of which came the amount accepted by the employee in lieu of damages, was not permitted to offset the extent of such contribution in a given case, in the employee's action of damages. The provision in the present statute permitting such offset, the court said, "would seem to afford an element of fairness and equality which the South Carolina statute lacks, in that it does not require one of the parties to the contract to fulfil his obligations, and release the other party."

Having in mind not only the purposes of the act of 1906, "but the means of its administration,—the ways it may be defeated,"—and that "legislation, to be practical and efficient, must regard this special purpose as well as the ultimate purpose" (*District of Columbia* v. *Brooke,* 214 U. S. 138, 53 L. ed. 941, 29 Sup. Ct. Rep. 560), we conclude that there was justification for the enactment of sec. 3, and that the responsibility therefor should be permitted to rest where it properly belongs, —with Congress. *Atkin* v. *Kansas,* 191 U. S. 207, 48 L. ed. 148, 24 Sup. Ct. Rep. 124. After all, the right of contract is hedged about with many restrictions, and must always yield to the common good.

It follows that the judgment must be reversed, with costs, and it is so ordered. Cause remanded for further proceedings.

*Reversed.*