SOUTHERN RAILWAY COMPANY *v.* ALLISON.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 232.   Argued April 8, 1903.—Decided May 18, 1903.

Although a statute of North Carolina provides that a foreign railroad company desiring to own property or carry on business, or exercise any corporate franchise within the State, must comply with certain specified provisions of the statute, and on complying therewith shall become a domestic corporation, such fact does not affect the character of the original corporation, and it does not thereby become a citizen of North Carolina so far as to affect the jurisdiction of the Federal courts upon a question of diverse citizenship.

Where a corporation which has complied with such provisions is sued in the state courts of North Carolina, an order of removal made by the Circuit Court of the United States operates to withdraw from the state court the right to hear and determine the case.

THE Supreme Court of the State of North Carolina affirmed a judgment against the railway company, which was entered on a verdict of a jury upon a trial in the state court, and the railway company has brought the case here by writ of error.

The plaintiff below brought his action in the state court against the railway company to recover damages suffered by reason of the alleged negligence of the defendant. The defendant answered, and averred that it was a corporation created and organized under the laws of the State of Virginia; it denied the various allegations of the complaint as to its negligence and as to the damages suffered by the plaintiff, and also set up as a defence plaintiff's contributory negligence. After answer

and under the provisions of the second section of the act of Congress, chapter 866, approved August 13, 1888, 25 Stat. 433, the defendant, alleging that it was a corporation created under the laws of Virginia, submitted a petition to the United States Circuit Court in North Carolina, for the removal of the case from the State to the United States court, and the ground for removal, as stated in the petition, was because of " prejudice or local influence" to such an extent that it would " not be able to obtain justice in such state court, or in any other state court to which the said defendant may, under the laws of the State, have the right, on account of such prejudice or local influence, to remove said cause." The petition was supported by an affidavit that set up facts from which the court might find that defendant could not obtain justice in the state court.

The Circuit Court decided that the proof submitted to it was sufficient ; that defendant was a citizen of Virginia, and that it could not, on account of local prejudice and influence, obtain a fair trial in the state court, and it, therefore, ordered the removal of the cause to the United States Circuit Court for the Western District of North Carolina. The court also ordered that its clerk should certify to the state court the order of removal, " together with copies of the petition, bond and affidavit, to the end that the state court may be advised of the action of this court and of its order of removal, and to the further end that the said state court may proceed no further with the said suit or action, and to the end also that the said state court may direct the clerk of the Superior Court of the county of McDowell to make a full and complete transcript of the record of said action and to certify the same to this court for trial."

Upon the filing of this order in the state court that court declined to grant the motion to surrender jurisdiction, holding that the case could not be legally removed to the Circuit Court of the United States, and it made the following order :

" In this case it appears to the court that the Circuit Court of the United States has caused an order for the removal of the case to the Circuit Court of the United States, upon petition setting forth that the defendant is a non-resident of the State of North Carolina; and it further appearing to the court, by

the admission of defendant, through its counsel, that the defendant has complied with the terms of the act of the legislature of the State of North Carolina, being chapter 62 of the acts of the general assembly of North Carolina at its session of 1899: It is thereupon considered by the court that the defendant is a corporation of this State by virtue of said act, and that it is not entitled to remove this cause to the Federal court. It is further considered by the court that the courts of the State of North Carolina have jurisdiction of this cause, and this court declines to surrender jurisdiction thereof. It is ordered by the court that a copy of this order be sent to the clerk of said Circuit Court of the United States by the clerk of this court."

The act of the legislature of North Carolina, referred to in the foregoing order, is set forth in full in the margin.[1]

---

[1] Chapter 62, Public Acts of 1899.

*The General Assembly of North Carolina do enact:*

SEC. 1. That every telegraph, telephone, express, insurance, steamboat and railroad company incorporated, created and organized under and by virtue of the laws of any State or government other than that of North Carolina, desiring to own property or to carry on business or to exercise any corporate franchise whatsoever in this State, shall become a domestic corporation of the State of North Carolina by filing in the office of the Secretary of State a copy of its charter duly authenticated in the manner directed by law for the authentication of statutes of the State or country under the laws of which such company or corporation is chartered and organized, and a copy of its by-laws duly authenticated by the oath of its secretary. Such corporation shall pay therefor to the Secretary of State, to be turned over by him into the state treasury, such fees as are or may be required by law.

SEC. 2. That if any such charter or by-laws, or any part thereof, filed in the office of the Secretary of State shall be in contravention or violation of the laws of this State, such charter or by-laws or such part thereof as are in conflict with the laws of this State shall be null and void in this State.

SEC. 3. That when any such corporation shall have complied with the provisions of this act above set out, it shall thereupon immediately become a corporation of this State, and shall enjoy the rights and privileges and be subject to the liability of corporations of this State the same as if such corporation had been originally created by the laws of this State. It may sue and be sued in all courts of this State and shall be subject to the jurisdiction of the courts of this State as fully as if such corporation were originally created under the laws of the State of North Carolina.

SEC. 4. That on and after the first day of June, eighteen hundred and

It was admitted that defendant had complied with the terms of the act before the cause of action set out in the complaint of plaintiff had accrued.

When the case was thereafter called for trial in the state court,

ninety-nine, it shall be unlawful for any such corporation to do business or to attempt to do business in this State without having fully complied with the requirements of this act.

SEC. 5. Any such corporation violating any provision of this act shall forfeit to the State of North Carolina a penalty of two hundred dollars for each and every day after the first day of June, eighteen hundred and ninety-nine, on which such corporation shall have continued to operate or do business without having complied with the requirements of this act. Such penalty shall be recoverable by the treasurer of the State for the benefit of the State of North Carolina, and it shall be his duty to sue for such forfeitures in the Superior Court of Wake County as the same accrue.

SEC. 6. No telegraph, telephone, express, insurance, steamboat or railroad company, which is a foreign corporation of another State doing business in North Carolina, shall be allowed to sue in the courts of North Carolina on or after June first, eighteen hundred and ninety-nine, until such foreign corporation has become a domestic corporation, either by a special act of the legislature, or under the provisions of this act.

SEC. 7. No such foreign corporation, mentioned in the preceding section of this act, shall be allowed to enter into a contract in the State of North Carolina on or after the first day of June, eighteen hundred and ninety-nine, nor shall any such contract heretofore or hereafter made or attempted to be made and entered into by such corporation in the State of North Carolina be enforcible by such corporation unless such corporation shall on or before the first day of June, eighteen hundred and ninety-nine, become a domestic corporation under and by virtue of the laws of North Carolina.

SEC. 8. Any such corporation violating the provisions of this act by doing any business in this State without first becoming a domestic corporation in the manner prescribed by law, shall, in addition to the penalty prescribed in section five of this act, forfeit a penalty of five hundred dollars for each day any such business shall be done by it in the State of North Carolina on and after the first day of June, eighteen hundred and ninety-nine. The amount so forfeited under the provisions of this section shall be recovered by the treasurer of North Carolina and it shall be the duty of said state treasurer to institute suit for same in the Superior Court of Wake County : *Provided*, The business contemplated in this section of this act does not embrace such business as is strictly the business of interstate commerce.

SEC. 9. That all laws and clauses of laws in conflict with the provisions of this act are hereby repealed.

SEC. 10. That this act shall be in force from and after its ratification.

Ratified the 10th day of February, A. D. 1899.

a motion was again made to dismiss the same from that court because of the removal to the United States Circuit Court. The motion was again denied, and an exception taken by the defendant. The case was then tried in the state court and resulted in a verdict for the plaintiff, upon which judgment was entered, and exception taken to the verdict and to the entry of judgment. Defendant appealed from the judgment to the Supreme Court of the State of North Carolina and assigned as error, among other things, the refusal of the trial court to recognize the removal, and its trial of the cause after it had been legally removed to the Federal court. The Supreme Court of North Carolina affirmed the judgment, 129 N. C. 336, and decided against the right claimed by defendant to a removal of the cause under the statute of the United States above referred to.

*Mr. W. A. Henderson* and *Mr. F. H. Busbee* for plaintiff in error. *Mr. Charles Price* was on the brief.

*Mr. E. J. Justice* for defendant in error. *Mr. J. C. Pritchard* was on the brief.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The state court refused to recognize the validity of the order of removal of this case to the Federal court solely because of the state statute, and because of the admitted compliance of defendant with its provisions. It held that by complying with the statute the defendant became a citizen of North Carolina, so far at least as to prevent it from applying for removal as a citizen of another State. We, therefore, assume the sufficiency of the facts to warrant the decision of the Circuit Court of the United States removing the case to that court, provided the defendant company was a citizen of Virginia and did not become a citizen of North Carolina by virtue of its compliance with the state statute.

The ruling of the state court, by which it proceeded to judg-

ment in the case notwithstanding the order of removal to the Federal court, is reviewable here under section 709, Revised Statutes. *Stone* v. *South Carolina*, 117 U. S. 430 ; *Missouri Pacific Railway Company* v. *Fitzgerald*, 160 U. S. 556.

Two propositions were argued at the bar : (1) Whether the state court had the right to pass upon the question of the validity of the order of the Circuit Court of the United States removing the case to that court ? (2) Did the defendant company, which was originally incorporated in the State of Virginia, have the right as a citizen of Virginia to remove the case into the Federal court, notwithstanding the defendant company had complied with the statute of North Carolina, which declared that upon doing the things therein mentioned the defendant became a domestic corporation of North Carolina ?

In the view we take of this case it is unnecessary to dwell upon the first of these questions. We, therefore, address ourselves to the second.

The statute of North Carolina provides in substance that a railroad company incorporated under the laws of any State or government, other than North Carolina, which desires to own property or carry on business, or to exercise any corporate franchise within that State, shall become a domestic corporation of the State of North Carolina " by filing in the office of the Secretary of State a copy of its charter duly authenticated in the manner directed by law for the authentication of statutes of the State or country under the laws of which such company or corporation is chartered and organized, and a copy of its by-laws duly authenticated by the oath of its secretary." Section 3 of the act provides :

" That when any such corporation shall have complied with the provisions of this act above set out, it shall thereupon immediately become a corporation of this State and shall enjoy the rights and privileges and be subject to the liability of corporations of this State the same as if such corporation had been originally created by the laws of this State. It may sue and be sued in all courts of this State and shall be subject to the jurisdiction of the courts of this State as fully as if such corporation were originally created under the laws of the State of North Carolina."

It is further provided by section 4 that it shall be unlawful for such foreign corporation to do business or attempt to do business in North Carolina after the first day of June, 1899, without having fully complied with the requirements of the act. It is admitted that the company did comply with the provisions of the act in relation to filing its charter, by-laws, etc., with the Secretary of State.

It early became material to inquire into the nature of the status of corporations with regard to the jurisdiction of the Federal courts under the Constitution and laws of the United States. A recent statement of the law on that subject is contained in the case of *St. Louis & San Francisco Railway Company* v. *James*, 161 U. S. 545. It was said by Mr. Justice Shiras, in delivering the opinion of the court in that case, that after considerable contention in the courts, it was finally determined by this court that the citizenship of a corporation was that of the State originally creating it, and that it was a presumption of law that the members of the corporation were citizens of the same State.

The facts upon which the decision of the court in that case was based, so far as important to be here observed, were these: The St. Louis and San Francisco Railway Company was a corporation originally created under the laws of the State of Missouri, and it operated a railroad from Monett in the State of Missouri to the southern border of that State. Subsequently, and under provisions of the laws of Arkansas, it entered that State for the purpose of operating its road therein from the southern boundary of the State of Missouri to Fort Smith in the State of Arkansas; the portion of the railroad in Arkansas was operated by the leasing of a railroad already or partly built in that State. The State of Arkansas had provided by its legislation that before any railroad corporation of any other State or Territory should be permitted to avail itself of the benefits of the act allowing the purchasing or leasing of any road within that State, the foreign corporation should "file with the Secretary of State of this State a certified copy of its articles of incorporation, if incorporated under a general law of such State or Territory, or a certified copy of the statute

laws of such State or Territory incorporating such company, where the charter of such railroad corporation was granted by special statute of such State; and upon the filing of such articles of incorporation or such charter, with a map and profile of the proposed line, and paying the fees prescribed by law for railroad charters, such railroad company shall, to all intents and purposes, become a railroad corporation of this State, subject to all of the laws of the State now in force or hereafter enacted, the same as if formally incorporated in this State, anything in its articles of incorporation or charter to the contrary notwithstanding, and such acts on the part of such corporation shall be conclusive evidence of the intent of such corporation to create and become a domestic corporation : *And provided further*, That every railroad corporation of any other State, which has heretofore leased or purchased any railroad in this State, shall, within sixty days from the passage of this act, file a duly certified copy of its articles of incorporation or charter with the Secretary of State of this State, and shall, thereupon, become a corporation of this State, anything in its articles of incorporation or charter to the contrary notwithstanding, and in all suits or proceedings instituted against any such corporation process may be served upon the agent or agents of such corporation or corporations in this State, in the same manner that process is authorized by law to be served upon the agents of railroad corporations in this State organized and existing under the laws of this State."

The railroad company, pursuant to that act, filed with the Secretary of State of the State of Arkansas a duly certified copy of its articles of incorporation under the laws of Missouri. After this had been done and while the company was operating its railroad from Monett, Missouri, to Fort Smith, Arkansas, one Etta James brought an action in the Circuit Court of the United States for the Western District of Arkansas against the company for negligence in maintaining a switch track at Monett, in Barry County, Missouri, so near its tracks that the husband of plaintiff was struck and killed by it on July 3, 1889, while employed as a fireman on one of the company's engines. The plaintiff was the widow and sole heir at law of her husband,

and resided at Monett, and was a citizen of the State of Missouri. She recovered a verdict in the United States Circuit Court in Arkansas, and the cause was taken to the Circuit Court of Appeals for the Eighth Circuit by the railroad company, which claimed that the Circuit Court of Arkansas had no jurisdiction, because the railroad company was a citizen of Missouri and the plaintiff was a citizen of the same State. That court, desiring instructions from the Supreme Court of the United States before deciding the case, propounded the following questions:

"1. In view of the provisions of the act of the general assembly of Arkansas, approved March 13, 1889, did the St. Louis and San Francisco Railway Company, by filing a certified copy of its articles of incorporation under the laws of Missouri with the Secretary of State of Arkansas, and continuing to operate its railroad through that State, become a corporation and citizen of the State of Arkansas?

"2. In view of the provisions of the act of the general assembly of Arkansas, approved March 13, 1889, did the St. Louis and San Francisco Railway Company, by filing a certified copy of its articles of incorporation under the laws of Missouri with the Secretary of State of Arkansas, and continuing to operate its railroad through that State, become a citizen of the State of Arkansas, so as to give the Circuit Court of the United States for the Western District of Arkansas jurisdiction of this action, in which the defendant in error was and is a citizen of the State of Missouri?

"3. In view of the provisions of the act of the general assembly of Arkansas, approved March 13, 1889, did the St. Louis and San Francisco Railway Company, by filing a certified copy of its articles of incorporation under the laws of Missouri with the Secretary of State of Arkansas, and continuing to operate its railroad through that State, become a citizen of the State of Arkansas, so as to give the Circuit Court of the United States for the Western District of Arkansas jurisdiction of this action, in which defendant in error was and is a resident and citizen of the State of Missouri, and the cause of action accrued in the State of Missouri, and arose from an accident that resulted

from the operation of the railroad of the company in that State?

"4. In view of the facts hereinbefore set forth, did the Circuit Court of the United States for the Western District of Arkansas have jurisdiction of this action?"

After a full examination of the prior cases Mr. Justice Shiras, speaking for the court, answered the second question in the negative, observing that such answer rendered it unnecessary to answer the other questions.

Here was a corporation originally incorporated in the State of Missouri going into the State of Arkansas and operating a railroad in that State by leasing a portion of it therein and complying with a statute which provided that, upon filing a certified copy of its articles of incorporation with the Secretary of State of Arkansas, it should be regarded as formally incorporated in that State, and it should thereby become a domestic corporation, and yet it was held that defendant could not be sued by a citizen of Missouri in the Federal court in the State of Arkansas; that although to some extent and for some purposes it might be regarded as a corporation of Arkansas, it was for purposes of jurisdiction in the Federal courts to be regarded as a corporation of the State of Missouri.

The case, it will be seen, was not decided upon the ground that the cause of action had arisen in the State of Missouri. It was admitted that the cause of action was transitory, but the broad question was decided that the company was a corporation of Missouri and a citizen of that State, and could not be sued by another citizen of that State in the Federal courts of Arkansas.

It is stated in the opinion:

"The presumption that a corporation is composed of citizens of the State which created it accompanies such corporation when it does business in another State, and it may sue or be sued in the Federal courts in such other State as a citizen of the State of its original creation.

"We are now asked to extend the doctrine of indisputable citizenship, so that if a corporation of one State, indisputably taken, for the purpose of Federal jurisdiction, to be composed

of citizens of such State, is authorized by the law of another State to do business therein, and to be endowed, for local purposes, with all the powers and privileges of a domestic corporation, such adopted corporation shall be deemed to be composed of citizens of the second State, in such a sense as to confer jurisdiction on the Federal courts at the suit of a citizen of the State of its original creation.

" We are unwilling to sanction such an extension of a doctrine which, as heretofore established, went to the very verge of judicial power. That doctrine began, as we have seen, in the assumption that state corporations were composed of citizens of the State which created them ; but such assumption was one of fact, and was the subject of allegation and traverse, and thus the jurisdiction of the Federal courts might be defeated. Then, after a long contest in this court, it was settled that the presumption of citizenship is one of law, not to be defeated by allegation or evidence to the contrary. There we are content to leave it."

In *Louisville &c. Railway Co.* v. *Louisville Trust Co.*, 174 U. S. 552, a question arose as to whether the railway company was a corporation of Kentucky as well as of the State where it was originally created. The exigencies of the case did not require a solution of that question, but the *James* case, 161 U. S. 545, *supra*, was referred to with approval in the opinion of the court, which was delivered by Mr. Justice Gray. In the course of that opinion, he said (p. 563) :

" But a decision of the question whether the plaintiff was or was not a corporation of Kentucky does not appear to this court to be required for the disposition of this case, either as to the jurisdiction, or as to the merits. As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the State of Indiana, even if it was afterwards created a corporation of the State of Kentucky also, it was and remained, for the purposes of the jurisdiction of the courts of the United States, a citizen of Indiana, the State by which it was originally created. It could neither have brought suit as a corporation of both States against a corporation or other citizen of either

State, nor could it have sued or been sued as a corporation of Kentucky, in any court of the United States."

So it seems that a corporation may be made what is termed a domestic corporation, or in form a domestic corporation, of a State in compliance with the legislation thereof, by filing a copy of its charter and by-laws with the Secretary of State, yet such fact does not affect the character of the original corporation. It does not thereby become a citizen of the State in which a copy of its charter is filed, so far as to affect the jurisdiction of the Federal courts upon a question of diverse citizenship.

Considerable stress has been laid, by those holding opposite views, upon the case of *Memphis & Charleston R. R. Co.* v. *Alabama,* 107 U. S. 581. It was there held that a railroad company, having been made by the statutes of Alabama an Alabama corporation, although having previously been incorporated in Tennessee, could not remove into the Circuit Court of the United States a suit brought against it in Alabama by a citizen of that State. But in that case the company was required by the legislation of Alabama to open books in that State for the subscription of stock in the capital of the corporation, so as to afford the citizens thereof an opportunity to take stock to the amount of a million and a half of dollars of the capital of the company. The Alabama act also provided that the company should, at the first meeting of the stockholders, designate a time when and a place or places in northern Alabama where, for the convenience of the citizens of the State who may be stockholders, an election for directors should be held, notice whereof was to be given in the newspapers, and elections for directors should be held at the same time both in Alabama and in Tennessee.

This court held, that by reason of the particular language used in the act, there was a separate original Alabama corporation formed; that the sections, taken altogether, made it a corporation created as well as controlled by the State of Alabama. It is stated in the opinion, page 584:

"The whole act, taken together, manifests the understanding and intention of the legislature of Alabama that the corporation,

which was thereby granted a right of way to construct through this State a railroad, with which any railroad company chartered or to be chartered in this State should have the right to connect its road; and which was required to construct a branch railroad in this State, to open books for subscriptions of stock to a certain amount in this State, to apply the moneys here subscribed to the construction of the road within this State, and to hold elections in this State; was and should be in law a corporation of the State of Alabama, although having one and the same organization with the corporation of the same name previously established by the legislature of Tennessee."

The difference between the above case and the cases we have already referred to is plain and fundamental, but in any event we regard the *James* case, reaffirmed and approved as it is by that of *Louisville &c. Railway* v. *Trust Company*, 174 U. S. *supra*, as decisive of the case before us.

We do not subscribe to the doctrine that if a corporation files its charter in one State, after having been first chartered in another State, and is sued by a citizen of the State in which it filed its charter, in the state courts of that State, the right of removal to the Federal courts will be denied, while at the same time if such a corporation is sued by a citizen of the State in which it filed its charter, in the United States courts, the jurisdiction of the United States courts will be sustained upon the ground that in the Federal courts the corporation is domestic in the State where it was originally created and where its original incorporators are citizens, and it will be conclusively presumed as a matter of law that they are citizens of the State originally chartering it. If there be jurisdiction in the United States courts in the latter case, on the ground that it is a corporation and citizen of the State in which it was created, that fact gives jurisdiction to the Federal court to remove the case from the state court when the corporation is sued by a citizen of the State in which it filed its charter, because such corporation is a citizen of another State, namely, the State in which it was originally created. The citizenship of the corporation is not changed because of the particular court in which the action is commenced. If it be a citizen of another State

in the one case, it is such citizen also in the other, and if the other party to the action be a citizen of a State other than the one which created the corporation the jurisdiction of the Federal courts exists, and the right of the corporation (upon complying with the statute) to remove the case from the state court when it is sued by a citizen of the State where its charter may have been subsequently filed, is granted by the laws of the United States.

We have read with respectful consideration the cases of *Debnam* v. *Southern Bell Telephone & Telegraph Company*, 126 N. C. 831, and *Layden* v. *Knights of Pythias &c.*, 128 N. C. 546, in which the Supreme Court of North Carolina comes to a different conclusion from that which we have reached in regard to the jurisdiction of the Federal courts in such a case as this, but we cannot concur in the doctrine of the Supreme Court of the State as announced in those cases. We feel bound by the decisions of this court upon that subject.

The Supreme Court of South Carolina has come to the same conclusion that we reach in this case, having altered its holding in *Mathis* v. *Railway Company*, 53 S. C. 246, 257, after the decision of the *James* case, 161 U. S., *supra*. See, to that effect, *Wilson* v. *Southern Railway &c.*, 36 S. E. Rep. 701.

In *Walters* v. *Chicago &c. Railroad Company*, 104 Fed. Rep. 377, the United States Circuit Court in Nebraska held, in accordance with the principles maintained in the *James* case, that the defendant, although made a domestic corporation of Nebraska, yet having in fact been originally created by the State of Illinois, was a citizen of that State. The motion to remand to the state court was therefore denied.

We are of opinion that the plaintiff in error was not a citizen of the State of North Carolina at the time it was sued by the defendant in error, so far as regards the jurisdiction of the Federal courts, and that the order of removal made by the Circuit Court of the United States operated to withdraw from the state court the right to hear and determine the case.

*The judgment of the Supreme Court of North Carolina is, therefore, reversed, and the case remanded to that court for further proceedings not inconsistent with the opinion of this court.*