GEORGE W. HURST v. SOUTHERN RAILWAY COMPANY.

(Filed 22 May, 1913.)

**Foreign Corporations — Purchaser at Foreclosure Sale — Domestic Corporations—Removal of Causes—Diversity of Citizenship—Interpretation of Statutes—Jurisdiction.**

A railroad corporation of another State purchasing the property of a railroad corporation of this State at a foreclosure sale under a mortgage or deed in trust becomes a new corporation of this State to the extent of the franchise, etc., of the domestic corporation thus acquired (Code, sec. 679), and may not remove a cause of action against it to the Federal court upon the ground of diversity of citizenship, brought by a citizen of North Carolina; and this being so, as a matter of law, the State courts, upon petition and bond for removal filed, are not deprived of their jurisdiction to pass upon this question when the uncontradicted facts are made to appear upon the face of the proceedings.

CLARK, C. J., concurring; WALKER and BROWN, JJ., dissenting.

·APPEAL by plaintiff from *Long, J.,* at October Term, 1912, of SWAIN.

This is a motion to remove the action from the Superior Court of Swain County to the Federal Court upon the ground that the defendant is a Virginia corporation. The motion was allowed, and the plaintiff excepted and appealed.

*Frye, Gant & Frye for plaintiff.*
*Mastin, Rollins & Wright for defendant.*

ALLEN, J. The plaintiff has followed the allegations of the complaint in *Ice Co. v. R. R.,* 144 N. C., 732, and the allegations in the petition for removal are substantially as those made in a similar petition filed in that case.

The question now presented is not, therefore, a new one, but was fully considered in the case referred to, in a learned and exhaustive opinion by *Justice Connor,* concurred in by all the members of the Court, and decided in favor of the contention of the appellant, and we have no disposition to disturb that decision.

It is alleged in the complaint that the defendant became the purchaser of the Western North Carolina Railroad Company

under foreclosure proceedings, and the conclusion reached by the Court in the coal company case was: "A suit cannot be removed from the State to the Federal court upon the ground of diversity of citizenship by a corporation of another State which became the purchaser of a corporation of this State under a sale made pursuant to a deed of trust or mortgage, by virtue of The Code, sec. 679, providing, upon the conveyance being made to 'the purchaser, the said corporation shall *ipso facto* be dissolved and the said purchaser shall forthwith be a new corporation, by any name which may be set forth in the conveyance,' etc."

The case of *Herrick v. R. R.,* 158 N. C., 310, is not in conflict with this view.

It was there held that "all *issues of fact* made upon the petition for removal must be tried in the Circuit Court, but the State court is at liberty to determine for itself whether, on the face of the record, a removal has been effected," and that the theory on which the rule as to removals rests is "that the record closes, so far as the question of removal is concerned, when the petition for removal is filed and the necessary security furnished. It presents, then, to the State court a pure question of law, and that is, whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record, which includes the petition and the pleadings and proceedings down to that time, that the petitioner is entitled to a removal of the suit. That question the State court has the right to decide for itself."

Applying this rule to the record before us, it appears that there is no dispute as to the facts, and that the real controversy is whether, upon these facts, the defendant is, as matter of law, a North Carolina corporation under our statutes, by reason of its purchase of the Western North Carolina Railroad Company, and this question the State courts can decide.

Reversed.

CLARK, C. J., concurring: The State courts are certainly competent to try a controversy arising over 6½ bushels of Irish potatoes, and as to the damages claimed, there is no reason to

believe that the State courts will be less fair to either side than the Federal court. On the other hand, though the Constitution does not guarantee to every man a trial by "jury of the vicinage," this is reasonable, and while a jury in the Federal court may be called such, still it is a great inconvenience, and usually an imposition of considerable expense to require a plaintiff, by removal to the Federal court, to litigate his case, over 100 miles away possibly, at Asheville, or Charlotte, or Greensboro, when other defendants find a just trial in the same county in which the transaction occurred. It is not unnatural that our people should prefer to try their causes before their neighbors as jurors and before judges selected by themselves, and not before judges appointed by a distant authority, and with the enormous cost attending trial at a distant point. Of course, when the statute grants a removal to another jurisdiction, it must be complied with. But whether it does so, being in derogation of common right and not applying to resident defendants, nor to nonresident defendants where the amount does not exceed $3,000, the courts will not be astute to find ground for removal unless the statute is clear.

In this case, so far from being clear, the statute was held by the unanimous decision of this Court not to confer this right upon this defendant. *Coal and Ice Co. v. R. R.,* 144 N. C., 732. That opinion was written with great care and after thorough examination of the Federal decisions, by *Mr. Justice Connor,* now the accomplished judge of the United States Federal Court for the Eastern District of North Carolina, and was concurred in by the other four judges, all of whom are still on this Bench, and now by *Mr. Justice Allen,* who occupies the seat then filled by *Judge Connor.* Such a decision so carefully considered and so ably and fully discussed, if reversed, should be set aside only by the United States Supreme Court. The inconvenience to the public of reversing this decision will be so great to the people along the line of this road and throughout Western North Carolina that we should be slow to question its authority.

The defendant itself has recognized the justice of that decision, and has been acting upon it, by exercising the right of

eminent domain, which it could not do unless it possessed that power as a North Carolina corporation. This is not the question of "domestication," as in the *Allison case,* but the defendant here bought the franchises and property it now uses, knowing that by the terms of the statute its purchase would be invalid and its title void unless, by the terms of the statute and of the deed it accepted, *ipso facto* as purchaser it became a North Carolina corporation. Solely by virtue of being such has it exercised any corporate or other functions in operating the Western North Carolina Railroad.

There is the Southern Railroad of Virginia, which as lessee operates the North Carolina Railroad, and there is the Southern Railroad of North Carolina, which is *ab initio* a North Carolina corporation, and by virtue thereof, only, operates the former Western North Carolina Railroad franchise. It is not unusual that there should be two individuals of the, same name, but that does not make them identical. The same is true of corporations. We have the Atlantic Coast Line, a North Carolina corporation, as we held in *Staton v. R. R.,* 144 N. C., 148. There is the Atlantic Coast Line of Virginia; the Atlantic Coast Line of Georgia; the Atlantic Coast Line of South Carolina; the Atlantic Coast Line of Connecticut. This Court held that this did not entitle the Atlantic Coast Line to remove a case to the Federal court when the cause of action arose in this State, for the Atlantic Coast Line of North Carolina was responsible and properly sued here. This is sustained by *Patch v. R. R.,* 207 U. S., 277, which holds that if a railroad is incorporated in two States, if sued in that one in which the cause of action arose, the case is not removable.

The subordinate Federal courts are created and have been abolished at will by statute, and their jurisdiction also has been conferred and modified from time to time, within the limits authorized by the Constitution, by acts of Congress. The primary function of these courts is to aid in the execution of the Federal laws. So far as jurisdiction is given them by reason of "diverse citizenship," this was based on the prejudice existing in 1787 (when the Constitution was formed), but now outworn, between different sections, and the limit has been raised

from $500 in the Judiciary Act of 1789 to $3,000. By uniform decisions it was held by the United States Supreme Court that "corporations" were not "citizens" within the meaning of this section, until the Court overruled itself in *R. R. v. Letson,* 43 U. S. (2 How.), 497, in 1842. Certainly there can be no reason to exempt from the jurisdiction of the State courts a corporation that is living, acting, and doing business here, under the daily protection of the State Government and its courts. Beyond question, a corporation like this, which has been created and given existence and its franchises to do business by a State statute, cannot exempt itself from the jurisdiction of this State, its creator, as a "foreign corporation."

The opinions of this Court, rendered by *Judge Connor* in *Coal and Ice Co. v. R. R.* and *Staton v. R. R.,* both above cited, are so fully discussed and so clearly expressed that nothing can be added thereto.

WALKER, J., dissenting: While hesitating always to disagree with my brethren of the majority, for whose opinion I entertain the most deferential respect, my mind is so thoroughly convinced of the error in this case that I cannot withhold my dissent to their view. The action was brought to recover accumulated penalties to the amount of $14,050, for failure to receive and ship 6½ bushels of Irish potatoes from Wesser Creek Station, North Carolina, to Bushnell, N. C. We are not concerned now with the merits of this demand, as the amount stated, if recoverable, is certainly sufficient to justify a removal of the case if the defendant is otherwise entitled to it.

The petition for removal alleges that the defendant in this case, whose agent was served with process, is a Virginia corporation, and so far as this Court may consider that allegation, it must be taken as admitted. If there is any controversy about it, *we* cannot settle it here. *Stone v. South Carolina,* 117 U. S., 432 (29 L. Ed., 962); *Carson v. Hyatt,* 118 U. S., 279 (30 L. Ed., 167). In the case last cited, *Chief Justice Waite* said: "The State court is not bound to surrender its jurisdiction until a case has been made which, on its face, shows that the petitioner for removal has a right to the transfer; but it may

also be said that 'all issues of fact made upon the petition for removal must be tried in the circuit court.' The State court is only at liberty to inquire whether, on the face of the record, a case has been made which requires it to proceed no further." This feature of the case will be referred to again. The petition further alleges that the Southern Railway Company of Virginia is authorized, by its charter, to acquire property and operate railroads in other States.

I think the decision of this Court is wrong, and that of *Judge Long,* who presided at the hearing of this motion, is right, upon two grounds. Let me say, in the beginning, that there is an essential difference, in my opinion, between the facts in this case and those presented by the record in *Coal and Ice Co. v. R. R.,* 144 N. C., 732, upon the authority of which the Court alone bases its judgment.

First. There are two propositions which cannot be gainsaid at this time: (1) That a corporation has general power to hold property in States other than the one which incorporated it, in the absence of statutory prohibition in such States, is firmly established. *Telegraph Co. v. Trust Co.,* 147 U. S., 431 (37 L. Ed., 231). (2) A corporation cannot change its residence or citizenship, but must have its legal home only at the place where it is located by or under the authority of its charter; but it may, by its agents, transact business anywhere, unless prohibited by its charter or excluded by local laws. *Ex parte Schollenberger,* 96 U. S., 369 (24 L. Ed., 853). There is another proposition which naturally follows from the other two just stated: (3) A corporation created by the laws of one State may carry on business in another, either by virtue of being created a corporation by the laws of the latter State also, as in *R. R. v. Vance,* 96 U. S., 450, or by virtue of a license, permission, or authority, granted by the laws of the latter State, to act in that State under its charter from the former State. *Martin v. R. R.,* 151 U. S., 673, 677. Other cases illustrating the difference between "incorporation" and mere "license" will be found in 6 Enc. of U. S. Supreme Court Reports, at p. 308, note 8. *Justice Miller* said, for the Court, in *R. R. v. R. R.,* 118 U. S., 290, that it does not seem to admit

of question that a corporation of one State, owning property and doing business in another State by its permission, express or implied, does not thereby become a citizen of the latter State.

With these general principles before us, let us look at the facts of this case. It appears that the Southern Railway, which purchased the franchise and property of the Western North Carolina Railroad Company, except its right to be a corporation, is itself a foreign corporation, having received its charter from the State of Virginia. It is so alleged in the petition for removal, and the original process issued in this case was served upon an agent of said corporation, he having verified the petition, in which the allegation of such service upon him as agent of the Southern Railway Company, the Virginia corporation, is plainly and distinctly alleged. It is also alleged that the Virginia corporation purchased the said franchise and property at the sale, which, as we know, was made under a decree of the United States Circuit Court for the Western District of this State.

Upon the admitted, or at least uncontroverted, facts of this case, the Southern Railway Company has never become a resident or citizen of this State by virtue of its purchase at the said judicial sale of the franchise and property of the Western North Carolina Railroad Company. The case of *R. R. v. James,* 161 U. S., 545 (40 L. Ed., 802), it seems clear to me, is a direct authority against any such contention. It appeared in the *James case* that the State of Arkansas permitted a foreign railroad corporation to lease or purchase any railroad in that State upon filing its charter with the Secretary of State, whereby it should become a corporation of the State of Arkansas. With regard to a controversy in that case of substantially the same nature as the one in our case, and referring to the *James case,* the same Court said in *R. R. v. Allison,* 190 U. S., 326 (47 L. Ed., 1078): "There was a corporation, originally incorporated in the State of Missouri, going into the State of Arkansas and operating a railroad in that State by leasing a portion of it therein and complying with a statute which provided that, upon filing a certified copy of its articles of incorporation with the Secretary of State of Arkansas, it should be

regarded as formally incorporated in that State, and it should
thereby become a domestic corporation, and yet it was held
that defendant could not be sued by a citizen of Missouri in
the Federal court in the State of Arkansas; that, although to
some extent and for some purposes it might be regarded as a
corporation of Arkansas, it was for purposes of jurisdiction in
the Federal courts to be regarded as a corporation of the State
of Missouri. The case, it will be seen, was not decided upon
the ground that the cause of action had arisen in the State of
Missouri. It was admitted that the cause of action was transi-
tory, but the broad question was decided that the company was
a corporation of Missouri and a citizen of that State, and could
not be sued by another citizen of that State in the Federal
courts of Arkansas." And in the same connection, the Court
in the *Allison case* referred with approval, and as strongly sup-
porting its view of the *James case,* to what was said by *Mr.
Justice Shiras,* in the latter case, as follows: "The presump-
tion that a corporation is composed of citizens of the State
which created it accompanies such corporation when it does
business in another State, and it may sue or be sued in the
Federal courts in such other State as a citizen of the State of
its original creation. We are now asked to extend the doc-
trine of indisputable citizenship, so that if a corporation of
one State, indisputably taken, for the purpose of Federal juris-
diction, to be composed of citizens of such State, is authorized
by the law of another State to do business therein, and to be
endowed, for local purposes, with all the powers and privileges
of a domestic corporation, such adopted corporation shall be
deemed to be composed of citizens of the second State, in such
a sense as to confer jurisdiction on the Federal courts at the
suit of a citizen of the State of its original creation. We are
unwilling to sanction such an extension of a doctrine which,
as heretofore established, went to the very verge of judicial
power. That doctrine began, as we have seen, in the assump-
tion that State corporations were composed of citizens of the
State which created them; but such assumption was one of fact,
and was the subject of allegation and traverse, and thus the
jurisdiction of the Federal courts might be defeated. Then,

after a long contest in this Court, it was settled that the presumption of citizenship is one of law, not to be defeated by allegation or evidence to the contrary. There we are content to leave it." And in *R. R. v. Trust Co.,* 174 U. S., 552 (43 L. Ed., 1081), the Court, upon a state of facts not materially different from, and certainly not stronger for the corporation which was seeking a removal, than those in this record, thus stated the law: "But a decision of the question whether the plaintiff was or was not a corporation of Kentucky does not appear to this Court to be required for the disposition of this case, either as to the jurisdiction or as to the merits. As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the State of Indiana, even if it was afterwards created a corporation of the State of Kentucky also, it was and remained for the purposes of the jurisdiction of the courts of the United States, a citizen of Indiana, the State by which it was originally created. It could neither have brought suit as a corporation of both States against a corporation or citizen of either State, nor could it have sued or been sued as a corporation of Kentucky, in any court of the United States. So it seems that a corporation may be made what is termed a domestic corporation, or in form a domestic corporation, of a State in compliance with the legislation thereof, by filing a copy of its charter and by-laws with the Secretary of State; yet such fact does not affect the character of the original corporation. It does not thereby become a citizen of the State in which a copy of its charter is filed, so far as to affect the jurisdiction of the Federal courts upon a question of diverse citizenship."

The case of *R. R. v. Alabama,* 107 U. S., 581 (27 L. Ed., 578), was distinguished in the *Allison case* from it and the other cases, because it appeared in the *Alabama case* that there was not only a separate corporation created in Alabama, but also a real one in law and in fact, there having been a full organization under a provision of law for that purpose, and not merely a declaration of corporate existence. There had been, in other words, a genuine incorporation of two distinct companies in the States of Tennessee and Alabama. Speaking

of this view of that case, the Court, in *Allison's case,* said: "This Court held that, by reason of the particular language used in the act, there was a separate, original Alabama corporation formed; that the sections, taken altogether, made it a corporation created as well as controlled by the State of Alabama." The two railroad companies were, in fact, separate corporations or entities, though they connected at the State line and had joint traffic arrangements. Each had control and jurisdiction, so to speak, over distinct railway systems.

While I am entirely unable to perceive any practical difference between the *James* or the *Allison case* and this one, it seems to me that the question as to what corporation was the purchaser at the judicial sale of the franchise and property of the Western North Carolina Railroad Company is completely foreclosed by the decision of the Supreme Court of the United States in *Julian v. Trust Co.,* 193 U. S., 93 (48 L. Ed., 629). That was a writ of *certiorari* to the United States Circuit Court of Appeals for the Fourth Circuit, to review a judgment which affirmed a decree of the Circuit Court for the Western District of North Carolina, enjoining a sale of the franchise and property of the Western North Carolina Railroad Company, purchased by the Southern Railway Company at the foreclosure sale, under certain judgments and executions obtained by certain persons in the State courts against said Western North Carolina Railroad Company. It was then determined, upon a full review of all the records and facts in the case, that the purchase at the foreclosure sale was made by the Southern Railway Company, the Virginian corporation, which was protected by law against any sale of the same by the judgment creditors. In the course of its opinion by *Mr. Justice Day,* the Court said: "It is true, the sections of the North Carolina Code herewith given clothe the purchaser with the right and privilege of organizing a corporation to operate the purchased property, but we find no requirement that he shall do so. The language of the last paragraph of section 1936 is, 'such purchaser or purchasers may associate with him or them any number of persons, and make and acknowledge and file articles of association as prescribed in this chapter; such purchaser or purchasers and their associates shall thereupon be a

new corporation, with all the powers, privileges, and franchises, and be subject to all the provisions of this chapter.' This confers a privilege, but does not prevent the purchaser from transferring the property to a company already formed and authorized to purchase and operate a railroad. *People v. Brooklyn, etc., R. Co.,* 89 N. Y., 75. The Southern Railway Company was authorized by its charter, among other things, to purchase or otherwise acquire the property of any railroad company organized under the laws of another State. We have been cited to no statute of the State of North Carolina forbidding the purchase of a railroad at foreclosure sale by a corporation of another State." In that case the Court reviewed the decision of this Court in *James v. R. R.,* 121 N. C., 523, in which it was held by unanimous decision, that the Southern Railway Company, a Virginia corporation, purchased the franchise and property of the Western North Carolina Railroad Company and "had gone into possession and control of the same, and has been running and operating the same ever since, under said purchase and deed." This is a clear and unmistakable decision by this Court upon the very question, in favor of the correctness of the order of removal made by *Judge Long* in this case, because if the Southern Railway Company of Virginia owns and operates the road, it follows, by all the authorities, that being a citizen of another State sued in one of the courts of this State, it has the right to a removal of the case to the United States Court.

In discussing questions of this kind, we are very apt to lose sight of the well marked distinction between legislation of a State which domesticates a corporation to the extent of subjecting it to control and regulation of local laws, and legislation which attempts to create a domestic out of a foreign corporation in such a sense as to make it a citizen of a State other than that of its origin and thus deprive it of the right of removal to the United States courts of a suit brought against it by a citizen of the State where it is claimed to have been domesticated. When the question involves the jurisdiction of the Federal courts, the distinction is an important one; its subjection to the influence and operation of local laws being generally conceded.

Second. This brings me to the consideration of my second proposition. If the facts in this case are not practically admitted or undisputed, then there must be an issue or question of fact as to the diverse citizenship of the parties to the record, and as that disputed question can only be tried by the Federal Court, which must determine as to its own jurisdiction, the removal by *Judge Long* was proper in order that it might be tried in the only forum designated by law for the purpose. *Rea v. Mirror Co.,* 158 N. C., 24; *Herrick v. R. R., ibid.,* N. C., 307. The petition filed in this case alleges facts entitling the plaintiff to a removal, if they be true. If they had been contested, the issue thus raised would have been one to be settled by the Federal court alone. As said in *Rea v. Mirror Co., supra:* "That Court being charged with the duty of exercising jurisdiction in such case, must have power to consider and determine the facts upon which jurisdiction rests," citing numerous cases to support the position. In any view, therefore, the case was properly removed by *Judge Long.*

It may be observed, in conclusion, that no railroad corporation has ever been recognized by this State, in its legislative or executive department, as the owner of the Western North Carolina Railroad, except the Southern Railway Company of Virginia. No such corporation has ever been organized in this State, nor has it even been recognized by the North Carolina Corporation Commission in any way. On the contrary, that commission has always considered it as a part of the system of the Southern Railway Company of Virginia, and has fixed transportation rates over it and assessed it for taxation and otherwise dealt in respect to it upon the basis of that understanding. Such a corporation is, therefore, of a most anomalous character, existing only in the imagination, or, at most, on paper, and so far is it from having any tangible or legal existence that it is entirely mythical. If it be contended that the Southern Railway Company of Virginia has no right to hold the franchise and own, use, and operate the property of the Western North Carolina Railroad Company, the conclusive answer is that the State alone can complain of the wrongful exercise of corporate rights and privileges, or of such *ultra vires* action of the railroad company. *Barcello v. Hapgood,*

HURST *v.* R. R.

118 N. C., at p. 729; *Bass v. Navigation Co.,* 111 N. C., at p. 449, and cases cited, and especially *Asheville Division, No. 15, v. Aston,* 92 N. C., 578. This is familiar learning. The Court held in the case of *Asheville Division, No. 15, v. Aston,* that for an abuse of powers and franchises by a corporation or for usurpation of powers not granted or for nonuser of such as may have been granted, the only remedy is in the name of the State, as such a cause of forfeiture or a usurpation of corporate rights not granted by the State should not be questioned collaterally, but by a direct proceeding, so that the corporation may be heard by answer. The Court said, quoting from *Elizabeth City Academy v. Lindsey,* 28 N. C., 476: "The sovereign alone has a right to complain, for if it is a usurpation, it is upon the rights of the sovereign, and his acquiescence is evidence that all things have been rightfully performed," citing *Attorney-General v. R. R.,* 28 N. C., 456, which is very pertinent to the facts of this case, for there it is said: "If the sovereign, with us the lawmaking power, with a distinct knowledge of the breach of duty by the corporation, a knowledge declared by the Legislature, or so clearly to be inferred from its own archives that the contrary cannot be, thinks proper by an act to remit the penalty, or to continue the corporate existence, or to deal with the corporation as lawfully and rightfully existing, notwithstanding such known default, such conduct must be taken, as in other cases of breaches of condition, to be intended as a declaration that the forfeiture is not insisted on, and, therefore, as a waiver of the previous default." The "archives" and statutes of this State nowhere sanction the view now taken by the Court of the rights of the Southern Railway Company of Virginia, but, on the contrary, it appears from them that it has been fully and continuously for many years recognized in all branches of the Government, having dealings with it, as the owner of the franchise and property of the Western North Carolina Railroad Company, and this recognition is in strict accordance with the legal rights of the defendant, as declared by the court of last resort which has supreme jurisdiction to finally pass upon and determine the question.

BROWN, J., concurs in the dissent.