Elsie W. RUDISILL and Coal, Feed & Lumber Company, Inc., Plaintiffs,

v.

**SOUTHERN RAILWAY COMPANY, Defendant.**

Civ. No. A–C–75–182.

United States District Court, W. D. North Carolina, Asheville Division.

Feb. 27, 1976.

James P. Erwin, Jr., McGuire, Wood, Erwin & Crow, Asheville, N. C., for plaintiffs.

Bennett, Kelly & Cagle, Asheville, N. C., for defendant.

## MEMORANDUM AND ORDER

WOODROW WILSON JONES, Chief Judge.

THIS case arises out of a derailment of a Southern Railway freight train on January 22, 1972, in the Town of Marshall, North Carolina. As a result of this derailment certain buildings belonging to the Plaintiffs were damaged and this action was instituted in the Superior Court of Madison County to recover for such losses. The Defendant, pursuant to 28 U.S.C.A. 1441, removed the case to the United States District Court for the Western District of North Carolina. The matter is now before this Court upon a Motion to Remand to state court in which the Plaintiffs allege that the Defendant, Southern Railway Company, is a North Carolina corporation, and therefore unable to meet the diversity requirements of 28 U.S.C.A. § 1332. This Motion was heard by the Court in Asheville on January 16, 1976, and upon consideration of the pleadings, briefs, exhibits, and oral arguments, the Court now enters its findings and conclusions.

The determinative issue is whether Southern Railway Company is a "citizen" of North Carolina for the purposes of 28 U.S.C.A. § 1332(c), which reads as follows:

"For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . ."

This subsection was added by a 1958 Amendment to effectuate Congressional policy, of reducing the number of diversity cases in federal courts. 1 Moore's Federal Practice, § 0.78(2), p. 723.55, citing *inter alia* Sen.Rep. No. 1830, 85th Cong., 2d Sess., to accompany H.R. 11102, 2 U.S.Code Cong. & Adm.News (1958) 3099. Learned authorities have debated the meaning of "any State" as it is used in the statute. However, Professor Moore and Professor Wright are in agreement that, in light of the expressed Congressional policy, the most logical and desirable interpretation of the phrase "any State" is one which determines a corporation to be a citizen of "every" state in which it has been incorporated. C. A. Wright, Law of Federal Courts 90–91 (2d Ed. 1970); 1 Moore's Federal Practice, § 0.78(2), p. 723.53, 723.55. See also *Lang v. Colonial Pipeline Co.*, 266 F.Supp. 552 (E.D. Pa.1967), *aff'd*, 383 F.2d 986 (3rd Cir. 1967); *Contra, Hudak v. Port Authority Trans-Hudson Corp.*, 238 F.Supp. 790 (S.D.N.Y. 1965); *Kozikowski v. Delaware River Port Authority*, 397 F.Supp. 1115 (D.C.N.J.1975). Certainly this reading of the statute is the one which Congress intended when it passed the Amendment. However, all is not resolved, for there remains a question of "incorporation" upon which these scholars differ.

Prior to 1958 a corporation was not considered as incorporated in a second state for diversity purposes where the second state compelled the reincorporation as a condition of doing business. *Southern R. Co. v. Allison*, 190 U.S. 326, 23 S.Ct. 713, 47 L.Ed. 1078 (1903). The question now becomes whether " 'every' state in which it is incorporated" includes states of involuntary incorporation.

It appears that Professor Wright has taken the position that this language is all

encompassing, and thereby makes a corporation a citizen of every state in which it is voluntarily or involuntarily incorporated. This conclusion is reached by a careful study of Professor Wright's discussion of the statutory language on pages 89–90 of his work, and his reference in footnote 20 to *Southern R. Co. v. Allison, supra,* as embodying the "former rule".

On the other hand, Professor Moore takes the following position:

"Treating a corporation as a citizen of 'any' state in which it has been incorporated, should not, . . . change the rules regarding involuntary incorporation . . . the cases which, for diversity purposes, disregard involuntary incorporation, are based upon a constitutional limitation on the states, which prevents their destruction of federal court jurisdiction where the Constitution and the Congress has said it shall exist. There is nothing in the Act of 1958 . . . that changes this doctrine.

"In short, it is our belief that the 1958 Amendment to § 1332 has eliminated the pre-existing 'forum' doctrine, and makes a corporation a citizen of every state in which it has been freely and actually incorporated." 1 Moore's Federal Practice § 0.78(2), pp. 723.57, 723.58.

In light of Professor Moore's discussion, and giving due regard to the reluctance of other courts to overrule the forum doctrine, this Court is of the opinion that a corporation should not be deemed a citizen of a state in which it has been compelled to incorporate. Indeed, a contrary finding may very well be in contravention of Section 2 of Article 3 of the Constitution. Therefore, the determination of jurisdiction in the case at bar turns upon the nature of Southern Railway's "incorporation" in the State of North Carolina. Although simply stated, the question is one of perplexing dimensions when the facts of this incorporation are applied to the controlling law.

The facts, as they appear from the pleadings and briefs, show that Southern Railway Company was incorporated, duly chartered, and organized under the laws of Virginia on June 18, 1894. On August 22, 1894, Southern Railway Company purchased under a foreclosure sale the Western North Carolina Railroad Company (Western), a North Carolina corporation. Under the provisions of the North Carolina law in effect at that time, §§ 697 and 698 of the Code of 1883, such a conveyance caused the Western to *ipso facto* be dissolved, and the Southern Railway Company to become a new corporation succeeding to all rights, privileges, and duties of the former corporation. However, on February 10, 1899, the General Assembly of North Carolina passed an Act entitled, "An Act to provide a manner in which foreign corporations may become domestic corporations." Southern Railway complied with the requirements of this Act and thereby became domesticated under North Carolina law.

The Plaintiffs contend that, since it is admitted the derailment in question occurred on the line of the old Western, the Defendant should be considered a citizen of North Carolina for jurisdictional purposes. The Plaintiffs do not contest Southern's status in other portions of the State, but contend that, for the purposes of this action, it became a corporation under the laws of North Carolina, Code of 1883, by its acquisition of Western. The Plaintiffs, therefore, contend that Southern Railway Company is a citizen of North Carolina, and that the Motion to Remand should be granted. Citing, *inter alia, Baltimore & O.R. Co. v. City of Parkersburg,* 268 U.S. 35, 45 S.Ct. 382, 69 L.Ed. 834 (1925); *Memphis & C.R. Co. v. Alabama,* 107 U.S. 581, 2 S.Ct. 432, 27 L.Ed. 518 (1883); *Town of Bethel v. ACL Ry. Co.,* 81 F.2d 60 (4th Cir. 1936); *Coal and Ice Co. v. Southern Railway Company,* 144 N.C. 732, 57 S.E. 444 (1907).

In response, the Defendant contends that the only relevant incorporation occurred in the year 1899 when Southern Railway became "domesticated" by North Carolina law. It relies upon the case of *Southern R. Co. v. Allison, supra,* which considered this very 1899 statute and found such "domestication" insufficient to justify a finding of

North Carolina citizenship for Southern Railway.

The Court has read the cited authority with great interest, and found that the problem turns upon what status Southern Railway Company acquired when it purchased the Western in 1894. The North Carolina Supreme Court, when faced with that issue in the *Coal and Ice case, supra,* found that Sections 697 and 698 of the Code of 1883 "created" a new corporation and thereby made Southern Railway a citizen of North Carolina. However, in a determination of what status Southern may hold for the purposes of federal diversity jurisdiction, this Court finds that this question, under present law, necessarily resides in the federal courts. Following this rationale, this Court concludes that for the purposes of this action, Southern Railway should be considered a Virginia corporation, and therefore diversity jurisdiction under 28 U.S.C.A. § 1332 exists.

The reasoning of the North Carolina Supreme Court in the *Coal and Ice case* is sound except for its limited discussion of *Julian v. Central Trust Co.,* 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629 (1904), in which the United States Supreme Court was required to address the provisions of Sections 697 and 698 of the Code of 1883. In speaking to that point the Court said, "It is true the sections of the North Carolina Code herewith given clothe the purchaser with the right and privilege of organizing a corporation to operate the purchased property, but we find *no requirement* that he shall do so." (Emphasis added). In effect, the Court found that Southern Railway acquired only the "right and privilege" to incorporate in North Carolina, and therefore did not automatically become a North Carolina corporation upon its purchase of the Western.

Applying this decision to the case at bar, there is nothing in the record to support a finding that Southern Railway exercised this privilege to incorporate before 1899. However, the State Department of North Carolina has certified that its records show the Southern Railway Company was duly domesticated on May 22, 1899. This being the case, it is clear that such domestication was involuntary under the 1899 Act and that diversity jurisdiction will properly rest in this Court. *Southern Railway Company v. Allison, supra.*

It should be noted that it is the acquisition of this "privilege" to incorporate which distinguishes this case from the *City of Parkersburg* and the *Town of Bethel* cases upon which the Plaintiffs rely. In those cases, the purchasing corporation was required to exercise any such privilege by filing documents with the state in which the purchase was made. There is nothing in this case which would intimate that Southern Railway was required by law to file any document with the State of North Carolina upon its purchase of the Western, and there is nothing to show that Southern Railway voluntarily filed documents with the State before 1899. Therefore, it is the conclusion of this Court that the cases upon which the Plaintiffs rely are distinguishable from the case at bar and should not be given controlling weight.

Furthermore, it should be noted that Mr. Justice Day, speaking for the Court in *Julian,* recognized that the Southern's purchase of Western would not impair its right of removal since diverse citizenship would still exist. At page 107, 24 S.Ct. at page 405, of that opinion, the Court said:

"The Southern Railway Company was authorized by its charter, among other things, to purchase or otherwise acquire the property of any railroad company organized under the laws of another State. We have been cited to no statute of the State of North Carolina forbidding the purchase of a railroad at foreclosure sale by a corporation of another State. . . (B)ut the Southern Railway Company, in purchasing a franchise granted by the State of North Carolina, and undertaking to operate a railroad within the State, is subject to regulation by the law of the State. This principle is not qualified because the right of removal of suits for diverse citizenship still exists, as was held in *Southern R. Co. v. Allison.*" (Citations omitted).

Therefore, in conclusion, it is the opinion of this Court that the reasoning of the United States Supreme Court in the *Julian* case is proper and thereby compels this Court to find that Southern Railway Company, for the purposes of this action, is a Virginia corporation duly domesticated in the State of North Carolina in 1899. Federal diversity jurisdiction therefore resides in this Court. To find otherwise would result in Southern Railway being a citizen of North Carolina in the areas formerly occupied by Western, but not a citizen in other regions where it is merely domesticated. Such technicalities create anomalies which lead to undesirable results. For Southern Railway Company to live in such a bifurcated existence would cast doubt in the mind of any prospective plaintiff as to what corporation was the proper party defendant. An improvident choice may lead to problems of limitation and the threat of dismissal. On the other hand, it would cause Southern Railway to search its past for various foreclosures, consolidations, and mergers, and to become versed in the law as penned by nineteenth century legislators. The end result would be a likely proliferation of "straw men" and "legal calisthenics" in order to take advantage of more modern legislative provisions. Such a result is undesirable, and not in compliance with the law as espoused in *Julian*. Therefore, it is the opinion of this Court that the Plaintiffs' Motion to Remand to state court should be denied.

IT IS, THEREFORE ORDERED that the Plaintiffs' Motion to Remand be, and the same is hereby denied. The Clerk is directed to send a copy of this Memorandum and Order to the attorneys for the parties.